William E. Wallace, Appellant, v. Commonwealth of Pennsylvania, Insurance Department, Appellee.

Argued December 5, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*John Churchman Smith,* with him *Gibbons, Buckley & Smith,* for appellant.

*David M. Narrow*, Assistant Attorney General, with him *Barton Isenberg*, Assistant Attorney General, and *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE MENCER, April 3, 1975:

This is an appeal by William E. Wallace (Wallace), an insurance agent, from a $500 penalty payable to the Commonwealth of Pennsylvania and imposed by order of the Insurance Commissioner.[1]

On April 16, 1973 and April 24, 1973, an investigator for the Insurance Department appeared, without prior notice, at Wallace's place of business and advised Wallace that he was on the premises for the purpose of making an investigation of the insurance agency. On his April 16, 1973 visit, the investigator exhibited to Wallace a letter from the Insurance Commissioner authorizing the investigation, and on April 24, 1973, this letter of authorization was presented to Wallace. On both occasions Wallace did not allow the investigation and denied the investigator access to the agency's books and papers unless his attorney were present. On both occasions Wallace endeavored to contact his attorney but was unsuccessful because the attorney was engaged in a courtroom trial on April 16, 1973 and was in Philadelphia on April 24, 1973.

As a result of these two refusals, a citation was issued to Wallace directing him to appear before a hearing examiner of the Insurance Department to determine whether he had violated Sections 213, 214, 216, and 639 of The Insurance Department Act of 1921 (Act), Act of May 17, 1921, P. L. 789, *as amended*, 40 P.S. §§51, 52,

---

1. This is not the first case we have considered relative to the Insurance Commissioner's imposition of a penalty on William E. Wallace. *See Wallace v. Insurance Department*, 9 Pa. Commonwealth Ct. 567, 308 A. 2d 162 (1973), where a $14,705 penalty for selling insurance policies without a special license, obtainable by payment of a $5 fee, was upheld.

54, 279. Following a hearing, Wallace was adjudicated guilty of failing to grant free access to all the books and papers relating to his business with Safeguard Mutual Insurance Company and other insurance companies, contrary to the requirements of Section 216 of the Act.

Wallace has appealed this adjudication under the provisions of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, *as amended,* 71 P.S. §1710.1 et seq. Section 44 of the Administrative Agency Law, 71 P.S. §1710.44, directs us to hear appeals on the record made before the agency and further provides:

"After hearing, the court shall affirm the adjudication unless it shall find that the same . . . is not in accordance with law . . ., or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court."

The Insurance Commissioner made only seven findings of fact and, of those, the four relevant here are as follows:

"4. On April 16, 1973, Harry Ruttenberg, Insurance Investigator of the Insurance Department, visited the office of William E. Wallace during a normal business hour.

"5. Mr. Ruttenberg identified himself, announced he was there to conduct an investigation of the agency, and presented a written authorization for conducting such investigation.

"6. William E. Wallace advised Mr. Ruttenberg that he would not be permitted to make an investigation.

"7. On April 24, 1973, Mr. Ruttenberg again visited the office of the Respondents for the purpose of making an investigation of the agency. Again Mr.

Wallace would not allow Mr. Ruttenberg access to his books and papers."

We have examined this record and can only conclude that these findings are unquestionably supported by substantial evidence. *See A. P. Weaver and Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971).

Our next consideration is to inquire whether these findings of fact which satisfy the substantial evidence rule support the relevant conclusions of law made by the Insurance Commissioner in his adjudication. Those conclusions of law read as follows:

"2. William E. Wallace a/k/a Wallace Insurance Agency failed on April 6 [*sic*] and 24, 1973 to grant free access to all the books and papers relating to its business with Safeguard Mutual Insurance Company and other insurance companies, contrary to the requirements of Section 216 of the Insurance Department Act, Act of May 17, 1921, P. L. 789 (40 P.S. §54).

"3. Such failure to conform to the requirements of Section 216 of the Insurance Department Act constitutes satisfactory evidence of such conduct as would disqualify an insurance agent from the initial issuance of a license under Section 603 of the same Act (40 P.S. §233), constituting two violations of Section 639 of the same Act (40 P.S. §279)."

It is readily apparent that they do support conclusions of law No. 2; however, we fail to comprehend how they support conclusion of law No. 3.

We are unable to accept the premise that Wallace's refusal to permit an investigation and his failure to provide access to his books and paper constitute "satisfactory evidence of such conduct as would disqualify an insurance agent from the initial issuance of a license under Section 603. . . ." The reason is elementary. There is no way *before the initial issuance of a license* that one could

engage in the conduct which is the subject of findings of fact Nos. 6 and 7; namely, the refusal to permit an investigation and permit access to books and papers of the agency. Before the initial issuance of a license, there is nothing to investigate relative to the applicant's books and papers which would only come into existence in the event that the applicant were issued a license and became engaged in the insurance business.

Section 603 of the Act, 40 P.S. §233, reads:

"(a) The Insurance Commissioner may issue, upon certification as aforesaid by any company, association, or exchange, authorized by law to transact business within this Commonwealth, an agent's license to any person of at least eighteen years of age and to any copartnership or corporation. No license as agent shall be granted to any corporation unless by provisions of its charter it is authorized to engage in the business of insurance or real estate, and unless individual licenses are also secured for each active officer of such corporation; and no license shall be granted to a copartnership or firm unless individual licenses are also secured for each active member of such copartnership or firm. Before any such license is granted, the applicant shall first make answer, in writing and under oath, to interrogatories on forms and supplements such as the Insurance Commissioner shall prepare and submit, which answers shall be vouched for by indorsement of the company, association, or exchange interested, and to the effect that the applicant is of good business reputation, and of experience in underwriting, other than soliciting, and is worthy of a license: Provided, That any applicant who shall have held, for any period during the five years immediately preceding the application, a license to transact, as agent, any class or kind of insurance business for any company, association, or exchange, authorized to transact business within this Common-

wealth, shall be entitled, upon proper application, to receive a license to transact, as agent, the same class or kind of insurance business for any other company, association, or exchange, so authorized to transact business, without the necessity of submitting to an examination. When the Insurance Commissioner is satisfied that the applicant is worthy of license, and that he is reasonably familiar with provisions of the insurance law of this Commonwealth, he shall issue a license stating that the company, association, or exchange, represented by the agent, has complied with the requirements of law and has been authorized by the Insurance Commissioner to transact business within this Commonwealth, and that the agent has been duly appointed by the company, association, or exchange named in the license. Licenses of life insurance agents shall expire annually at midnight of March thirty-first, licenses of fire insurance agents shall expire annually at midnight of Septembert thirtieth, and the licenses of casualty and health and accident insurance agents shall expire annually at midnight of December thirty-first, unless sooner terminated as the result of severance of business relations between the company, association, or exchange and the agent, or unless revoked by the Insurance Commissioner for cause. Licenses for casualty insurance agents issued to expire at midnight November thirtieth, one thousand nine hundred forty-nine, are hereby extended until midnight December thirty-first, one thousand nine hundred forty-nine. The department shall collect an additional fee for each such license extended at the rate of one-twelfth of the annual rate, as fixed by this act, for each additional month that the term of such licenses are extended. Any person whose license is revoked may appeal to the Commonwealth Court within thirty days of the date of receipt, by registered mail, of a notice of the fact of such revocation. The provisions of this section

shall apply to domestic mutual fire insurance companies, but no agent of a domestic mutual fire insurance company acting or authorized to act as such on the effective date of this act shall be required to take an examination for licensure.

"(b) Nothing in subsection (a) of this section shall be construed as requiring agents of domestic mutual fire insurance companies which agents write only coverages other than insurance upon automobiles authorized by clauses (1), (2) and (3) of subsection (b) of section 202 of the act of May 17, 1921 (P. L. 682), known as 'The Insurance Company Law of 1921' [40 P.S. §382], to submit to examination prior to licensure by the Insurance Commissioner.

"(c) The examination provided for in subsection (a) shall not be required of any person who has received the designation of Chartered Life Underwriter, (C.L.U.) from the American College of Life Underwriters, except, that such person may be examined on pertinent provisions of the insurance laws as determined by the Insurance Commissioner."

We recognize that, under the provisions of this section, the Insurance Commissioner shall issue a license to an agent only when he is satisfied that he is "worthy of license." Understandably, if, subsequent to a license's being issued to an agent, postlicense conduct such as failing to file income tax returns became known to the Insurance Commissioner, such conduct would support the imposition of penalties, suspension, revocation, or license renewal refusal under the provisions of Section 639, since if occurring prelicense, it would have made the applicant unworthy to be issued an agent's license. However, here there is no possibility that the conduct of not permitting the investigation of an agent's books and records could disqualify an applicant from the issuance of the *initial license,* which license allows him for the very first time to engage in insurance transactions that produce and necessitate books and records related

thereto. Prior to the initial issuance of a license, such conduct as involved here would be impossible, *i.e.*, not disqualifying.

Therefore, we can only conclude that the Insurance Commissioner's conclusion of law No. 3 is not supported by necessary findings of fact and that his order imposing a penalty upon Wallace was not in accordance with law.

The Act applicable in this case provides no comparable provision as found in the Real Estate Brokers License Act of 1929, Act of May 1, 1929, P. L. 1216, *as amended,* 63 P.S. §431 et seq. Section 10(a)(11)(v) of that Act, *as amended,* 63 P.S. §440(a)(11)(v), provides, *inter alia,* as follows:

> "(a) The commission ... shall have the power temporarily to suspend or permanently to revoke licenses ... when ... it shall find the holder thereof to have been guilty ... (11) [o]f failure to comply with the following requirements: ... (v) Every real estate broker shall keep records of all funds deposited [in escrow accounts]. ... All such records and funds shall be subject to inspection by the commission."

Therefore, the difference in statutory language between the Real Estate Brokers License Act of 1929 and The Insurance Department Act of 1921 clearly distinguishes the instant case from *State Real Estate Commission v. Roberts,* 441 Pa. 159, 271 A. 2d 246 (1970).[2]

Accordingly, we make the following

### ORDER

AND NOW, this 3rd day of April, 1975, the appeal of William E. Wallace is sustained, the Insurance Commissioner's adjudication made February 5, 1974 is set aside, and his order imposing a penalty of $500 on William E. Wallace is reversed.

---

2. We do not consider here the power of the Insurance Commissioner to subpoena the desired records nor his right to refuse a renewal of the license issued Wallace because of his unwillingness to permit the examination of his records.