Commonwealth of Pennsylvania, Insurance Department *v.* Anthony Ciervo, Jr., Appellant.

30

Argued February 2, 1976, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR. did not participate.

*Bruce E. Cooper,* with him *Cooper, Friedman & Butler,* for appellant.

*Andrew F. Giffin,* Assistant Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, March 15, 1976:

Anthony Ciervo, Jr. (appellant) was a licensed insurance broker charged with several violations of Section 14 of The Casualty and Surety Rate Regulatory Act[1] (Rate Act) and one violation of Section 633.1 of The Insurance Department Act of one thousand nine hundred and twenty-one[2] (Insurance Act). After hearings held on September 11, 1974 and October 18, 1974, the Insurance Commissioner concluded that there existed satisfactory evidence of conduct (the alleged violations of Section 14 of the Rate Act and Section 633.1 of the Insurance Act) which would have disqualified appellant from the initial

---

1. Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §1194.
2. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §273.1.

issuance of a broker's license under the criteria set forth in Section 622 of the Insurance Act, 40 P.S. §252. Exercising his discretionary power pursuant to Section 639 of the same act, 40 P.S. §279, the Commissioner revoked appellant's license to act as an insurance broker and imposed a fine of $5,000 by order dated July 25, 1975. From this adjudication appellant appeals to this Court.

Appellant correctly recognizes that our scope of review of the Insurance Commissioner's decision is limited by Section 44 of the Administrative Agency Law.[3] We must affirm the adjudication of the agency unless there has been an error of law or necessary findings of fact are unsupported by substantial evidence. Initially, appellant urges that many of the Commissioner's findings were based entirely on hearsay evidence and as such cannot be supported by substantial evidence.

The evidence adduced at the hearing was of two types, that presented by witnesses appearing at the hearing and evidence consisting of insurance company and motor vehicle records. The unverified documentary evidence entered over objection of appellant's counsel was, in our view, hearsay not properly qualified under the business records exception to the hearsay rule. Thus, this evidence alone could not support findings of fact.

This leaves us with the Commissioner's findings based on the testimony of five witnesses, Dorothy Morris, Frank Sullivan, Louise Higginbotham, L. O. Barrett, and Eugene Toby, all of whom were present at the hearing and available for cross-examination.

The charge that appellant violated Section 633.1 of the Insurance Act is based entirely on the testimony of Dorothy Morris, who testified that she had paid appellant for two identical insurance policies on the same automobile and had not received a refund for the alleged dupli-

---

3. Act of June 4, 1945, P.L. 1388, *as amended*, 71 P.S. §1710.44.

cate payment. The Commissioner found that appellant had mingled this alleged second payment with his own funds, thus violating Section 633.1, which provides:

"Every insurance agent and broker, acting as such in this Commonwealth, shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or broker and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity. Nothing herein contained shall be deemed to require any such agent or broker to maintain a separate bank deposit for the funds of each such principal, if and as long as the funds so held for each such principal are reasonably ascertainable from the books of account and records of such agent or broker."

Appellant asserts that the evidence does not support the Commissioner's findings on this charge. We agree. Although the record clearly shows that two identical policies were in fact issued to Mrs. Morris, it is equally clear, and the Commissioner found, that one policy was cancelled within a few days and that a total of $65 was refunded to Mrs. Morris. Appellant explained that the duplication was caused by an administrative error which was rectified when discovered. Mrs. Morris testified that she paid the automobile dealer from whom she purchased her car $248 for insurance placed through appellant. She also testified that she thought that she again paid for the same insurance through charges on her monthly financing contract with the bank. Our thorough review of this record reveals that Mrs. Morris' testimony on this point was equivocal and contradictory. There was not, in our view, substantial evidence on which to base a finding that duplicate payments were ever made; nor is there *any* evidence that such payments, if made, were mingled improperly with the appellant's funds. Accordingly, we

find no substantial evidence to support a finding of a violation of Section 633.1.

We next turn to the alleged violations of Section 14 of the Rate Act. That section states:

> "No person or organization shall wilfully withhold information from, or knowingly give false or misleading information to, the Commissioner, any statistical agency designated by the Commissioner, any rating organization, or any insurer, which will affect the rates or premiums chargeable under this Act."

Appellant was charged with supplying false information on numerous insurance applications, including those of the five witnesses who testified at the hearing. The inaccuracies concerned such vital areas as the number of previous automobile accidents of some applicants, as well as previous policy cancellations or refusals to insure by other insurance carriers. The five witnesses all testified that the information appearing on their applications was incorrect in some important respect and was not supplied by them. In addition, these same witnesses testified that their purported signatures appearing on their applications were not genuine. None of the witnesses had ever given appellant or anyone else on his staff authority to sign applications on their behalf. In two instances auto consent to rate filings of L. O. Barrett and Eugene Toby bore appellant's signature under the legend: "I certify that the insured's signature is true and correct and that this completed application was signed in my presence." Both men testified that they had neither signed the application nor ever been in appellant's presence. Appellant himself testified that it was his general practice to sign on behalf of an insured under certain circumstances.

Appellant asserts, rather disingenuously in our view, that the Mount Vernon Insurance Company, with whom appellant placed the insurance in question, has a provision in its manual allowing an agent or broker to sign for an insured. Since the manual is approved by the Insur-

ance Department, appellant argues that he was acting in accordance with law in signing for applicants. Even if this provision could be relied upon, it is clear that such signatures must be authorized by the insured. In at least these five instances they were not. In short, the evidence establishes the general use of practices which any person exercising ordinary business judgment could not condone.

Section 14, however, requires more. It requires that misinformation be *knowingly* supplied. The burden of proving that appellant knew the information he supplied was false, of course, falls upon the Commonwealth as the moving party. In each of these cases, appellant testified that he relied upon information supplied to him by persons identified as employees of automobile agencies or lending institutions who placed insurance through appellant from time to time. The Commonwealth produced no evidence to rebut this explanation, nor did it seek to call as witnesses the named persons who allegedly gave appellant the information. We conclude then, as a matter of law, that the Commonwealth failed to meet its burden of showing that appellant supplied misinformation knowing it was false.

There is in this case ample evidence of slipshod and irregular business practices in appellant's office. The failure to verify or to establish procedures designed to verify critical information on which others will subsequently act and appellant's seeming indifference to whether he had the authority to sign another's name are practices which would call into question the ethics and judgment of any business person. Accordingly, we find that a record of similar office procedure on the part of any person applying for an insurance broker's license would furnish a basis for the Commissioner to disqualify the applicant from initially receiving a license.

The instant case is distinguishable on its facts from *Wallace v. Insurance Department*, 18 Pa. Commonwealth Ct. 267, 334 A. 2d 830 (1975). In *Wallace*, the misconduct

involved—failure to allow inspection of the agent's books and records—only became possible after a license was issued, since prior to that time Wallace was under no compulsion to allow inspection of his records by the Insurance Department. We held that misconduct which could occur only after a license was issued could not support a finding that the same conduct could have prevented the initial issuance of a license. In the instant case, the conduct complained of, as a pattern of behavior, could occur in any business. The Commissioner could, as we have stated, disqualify a person with a history of engaging in similar practices from obtaining a license initially, pursuant to Section 622 of the Insurance Act.

There remains only a question of the proper penalty to be imposed. Since we have found that there is not substantial evidence to support the charges of violations of Section 14 of the Rate Act and Section 633.1 of the Insurance Act, we find it necessary to modify the Commissioner's order under our authority found in Section 44 of the Administrative Agency Law which reads in pertinent part:

> "If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court."

We cannot, in modifying the penalty, exceed the discretion granted to the Commissioner by Section 639 of the Insurance Act, 40 P.S. §279, which provides in part:

> "[U]pon satisfactory evidence of such conduct as would disqualify such agent or broker or excess broker from initial issuance of a license under sections six hundred three, *six hundred twenty-two* and six hundred twenty-four, the Insurance Commissioner may, in his discretion, pursue any one or more of the following courses of action:
>
> > (1) Suspend or revoke or refuse to renew the license of such offending party or parties;

36

(2) Impose a penalty of not more than one thousand dollars for each and every act in violation of any of said sections by said party or parties." (Emphasis added.)

Under the facts of this case, we find that a suspension of appellant's license for one year and the payment of a $2,000 fine will afford a sufficient penalty. *See Sheppard v. Old Republic Life Insurance Company*, 21 Pa. Commonwealth Ct. 360, 346 A. 2d 383 (1975).

Accordingly, we enter our

### ORDER

Now, this 15th day of March, 1976, the order of the Insurance Commissioner in the above named case is reversed in part and modified in part to provide for a penalty of a one year's suspension of all licenses issued to Anthony Ciervo, Jr., by the Insurance Commissioner, said suspension to commence twenty (20) days from this date. Anthony Ciervo, Jr., shall, in addition, pay to the Commonwealth of Pennsylvania a penalty in the amount of $2,000.