## Antonietta v. Patsch Brothers, Inc.

*Robert L. Ceisler,* for plaintiffs.
*Robert L. Zeman,* for defendant.

TERPUTAC, J., June 13, 1984—Before the court en banc are exceptions to the verdict entered by former President Judge Charles G. Sweet in an action in equity for specific performance. Since the exceptions were filed on January 6, 1984, the new rules of procedure governing post-verdict motions are applicable. Therefore, counsel should have presented motions for post-trial relief in accordance with Pa.R.C.P. 227.1, effective January 1, 1984. Despite the oversight of counsel, we shall construe his "exceptions" as motions for post-trial relief.

This property dispute, which dates back twenty-four years, involves the disposition of less than an acre of land located in Chartiers Township, Washington County, Pa. On September 29, 1960, defendant, Patsch Brothers, Inc., (hereinafter Patsch) agreed to sell the realty to plaintiffs, Peter Antonietta, Jr. and his wife, Barbara D. Antoinetta, for the sum of $500. To secure the deal, plaintiffs made a down payment of $50 in exchange for a receipt signed by "C.W.P." (C.W. Patsch), then secre-

tary of the Patsch corporation.* In addition to the description of the property, the receipt set out the terms of the agreement.

Despite the confusion surrounding the final closing and the delivery of the deed, the Antoniettas entered the property in March of 1961 to plant and to cultivate their first garden. On September 5, 1961, plaintiffs placed a mobile home on the tract of land and the Antonietta family resided there until they moved to their present address on December 5, 1966. Even though it is in a severe state of disrepair, the mobile home, containing numerous personal effects owned by plaintiffs, remains on the property to this day. Moreover, improvements such as the driveway and several structures placed on the property by the Antoniettas as well as their annual cultivation of a large garden demonstrate plaintiffs' continuous possession of the realty.

Prior to the formal closing of the transaction between Patsch and the Antoniettas, the testimony indicates circumstances arose which precluded the delivery of the deed to plaintiffs. While defendant alleges plaintiffs unilaterally rescinded the contract when they failed to tender the balance. of the purchase price, plaintiffs contend that in 1961 the full amount owed to Patsch was deposited in a trust ac-

---

* The receipt entered into evidence as Plaintiff's Exhibit A reads as follows:

Sept. 29, _____ 1960.

No._____

"Received of Peter Antonietta, Jr., Barbara D.
      Fifty Dollars
on plot of land 100 ft. frontage east of King
(illegible) depth of creek.
Total price $500 plus tax, deed
and survey
                                   Patsch Bros.
                                   C.W.P

count held by their attorney and that throughout this 24 year period they have been ready, willing and able to consummate the transaction.

In any event plaintiff never received the deed to the property; consequently, they brought this complaint in an action for specific performance on November 16, 1978. On August 10, 1979, preliminary objections filed by defendant in the nature of a motion to strike and a demurrer were denied. However, plaintiffs were orderd to file an amended complaint and did so on August 28, 1979. Once more defendant filed preliminary objections and they were denied. On January 15, 1980, defendant filed its answer to the second complaint and in response plaintiffs filed their reply to new matter on February 4, 1980.

After numerous continuances, the chancellor heard testimony on three separate dates: January 5, 1983, May 27, 1983, and finally December 12, 1983. At the conclusion of the trial, the chancellor directed counsel to submit short memoranda delineating the pertinent law in lieu of oral argument and briefs. Based upon the memoranda and the testimony, the court rendered a "Minute," which is a calculation of the monies plaintiffs had to pay, and a "Verdict" in favor of plaintiffs on December 20, 1983. On January 6, 1984, counsel for defendant filed no less than 18 exceptions to that decision. Argument on those exceptions was scheduled before the court en banc on March 15, 1984. In their briefs on the exceptions counsel outlined four major issues which the court now addresses: (1) Was the verdict against the law and the evidence; (2) did plaintiffs establish a basis or theory of their right to specific performance; (3) did plaintiffs unilaterally rescind the sale and waive their right to specific performance, and (4) are plaintiffs guilty of laches.

I

## THE VERDICT ENTERED BY THE CHANCELLOR, WHICH IS IN SUBSTANTIAL COMPLIANCE WITH PA. R.C.P. NOS. 1516 THROUGH 1519, IS SUPPORTED BY THE LAW AND THE WEIGHT OF THE EVIDENCE.

In the absence of clear error or an abuse of discretion, the verdict of the trial judge sitting without a jury, rendered without entering specific findings and conclusions, will not be overturned. Merion Springs Co. v. Muelles Hnos Garcia Torres, ____ Pa. Super. ____, 462 A.2d 686 (1982). A general verdict, such as the verdict rendered by the chancellor in this case, shall be reviewed by the same standards and accorded the same deference as a general verdict rendered by a jury. Merion Springs, supra. It is fundamental law that the chancellor's findings of fact, based upon adequate evidence, which are approved by the court en banc, have the force and effect of a jury's verdict and will not be disturbed on appeal. Snow v. Corsica Construction Company, Inc., 459 Pa. 528, 532, 329 A.2d 887, 889 (1974).

In an action for specific performance, the plaintiffs have the burden of proving all the essential elements of their cause of action. At trial, plaintiffs had to prove the existence of the contract, the actual terms of the agreement, and their willingness and readiness to perform. 71 Am. Jur. 2d Specific Performances §207 (1973). There is substantial evidence in the record that the parties did in fact enter into an agreement of sale on September 29, 1960. First, the receipt itelf, is a binding, valid contract. Schermer v. Wilmart, 282 Pa. 55, 127 A. 315 (1925). In addition to meeting the requirements of the statute of Frauds, the court is satisfied that the description of the property is sufficient to identify

the parcel and that the terms of the agreement are clear, precise, complete and free from ambiguity. In every respect, it is an appropriate agreement and warrants a decree of specific performance. Snow v. Corsica Construction Compay, Inc., supra. "The mere fact that the receipt contemplated a more formal document to be drawn in the future, does not alone defeat the right." Schermer v. Wilmart, 282 Pa. at 58, 127 A. at 316. Though the court will not speculate about why plaintiffs waited more than 18 years to bring this action, the correspondence sent by counsel for plaintiffs at various times is indicative of the continuing effort on the part of the Antoniettas to secure the deed. Finally, the court cannot disregard the uninterrupted presence of plaintiffs on the property. Even if the receipt is not sufficient, the statute of frauds is satisfied where plaintiffs have entered into possession and made substantial improvements under the doctrine of part performance. Klingensmith v. Klingensmith, 375 Pa. 178, 100 A.2d 76 (1953). Even though the Antoniettas moved to another residence, at all times from 1961 through the present plaintiffs have maintained possession of the property. The failure of the Patsch corporation, which was fully aware of the family's presence for the entire period, to remove plaintiffs to a strong indication that the parties at some point had reached a mutual understanding. Based upon the circumstances, relief in equity is a matter of grace which rests within the broad discretion of the chancellor. Rennyson v. Rozell, 106 Pa. 407, 412 (1884).

Because the "Verdict" and "Minute" rendered by the trial court adopted the findings of fact submitted by plaintiffs and did not include a statement of the facts and a decree nisi, defendant contends that the verdict is defective for non-compliance with Pa.

R.C.P. 1516 through 1519. Regardless of the nomenclature used to describe the decision of the trial court, it is in substantial compliance with the rules. Sotak v. Nitschke, 303 Pa. Super. 361, 449 A.2d 729 (1982); Checker Oil Company of Delaware, Inc. v. Hogg, 17 Lebanon 107 (C.P. 1977).

Undoubtedly, the importance of compliance with Pa. R.C.P. 1516 through 1519 is to establish an adequate record for appeal purposes. Balin v. Pleasure Time, Inc., 243 Pa. Super. 61, 364 A.2d 449 (1976). Because a failure to adhere to the requirements set out in the rules may result in vacation of the decree, In Re Involuntary Termination of Parental Rights to B.M.D. and R.L.D., 487 Pa. 387, 409 A.2d 404 (1979), the chancellor and the litigants must observe the following guidelines set out by the Supreme Court in Community Sports Inc. v. Oakland Oaks, 429 Pa. 412, 240 A.2d 491 (1968):

"Pennsylvania Rules of Civil Procedure 1516 to 1519 clearly enunciate the steps which must be followed by the chancellor, and by the litigants, before a procedurally proper appeal may be taken to this court. Rule 1516 recites that the parties may file requests for findings of fact and conclusions of law. Rule 1517 itemizes the contents of the chancellor's "adjudication." This adjudication must contain, in addition to a decree nisi, a summary of the issues raised in the pleadings, specified findings of fact and conclusions of law, and a discussion of the factual and legal questions involved in the case. Rule 1518 allows the parties 20 days to file specific exceptions to this adjudication. Finally, Rule 1519 provides that the court en banc shall pass on these exceptions, or, if none are filed, the prothonotary, upon praecipe, shall enter the decree as final. All of these steps are necessary to establish an adequate record on appeal." Id. 429 Pa. at 414, 240 A.2d at

492. Despite the fact that the decision of the chancellor is labelled "Verdict" and "Minute", the verdict conforms to the standards established by the Supreme Court. Sotak v. Nitschke, supra. In Sotak v. Nitschke, a Washington County case affirmed by the Superior Court, the absence of a statement of the issues, chronological statement of the facts and conclusions of law, and the adoption of the plaintiffs' proposed findings of fact and conclusions of law by chancellor did not nullify the decree. Since defendant Patsch was not deprived of an adequate record for appeal, the corporation suffered no harm or prejudice in that respect and, therefore, there is no basis for a reversal.

## II

## PURSUANT TO PA. R.C.P. 1020(c) AND THE CASE LAW INTERPRETING THE RULE, THE PLAINTIFFS WERE NOT UNDER A DUTY TO ELECT ONE THEORY OF RECOVERY MERELY BECAUSE THEY PLEADED IN THE ALTERNATIVE.

Presumably because this was a rather complicated case with substantial legal questions regarding the adequacy of the receipt executed on September 29, 1960, plaintiffs pleaded in the alternative to ensure the basis for recovery. Though prior practice under the law required consistency, since the adoption of Pa. R.C.P. 1020(c) an important change in pleading has been effected. Goodrich-Amram 2d 1020(c):1. Inconsistent and alternative pleadings are expressly authorized by Rule 1020(c) which provides: "Causes of action and defenses may be pleaded in the alternative." Moreover, to avoid the possibility that a meritorious claim will fail because the wrong legal theory was chosen, a plaintiff will

not be forced to elect a particular theory in pursuing the claim. Schreiber v. Republic Intermodal Corp., 473 Pa. 614, 375 A.2d 1285 (1977); Goodrich-Amram 2d 1020(c):1. Plaintiffs proceeded properly.

## III

ORAL STATEMENTS ALLEGEDLY MADE BY THE PLAINTIFFS TO C. W. PATSCH AS RECALLED BY HIS SON, WILLIAM C. PATSCH, WERE NOT SUFFICIENT TO RESCIND THE CONTRACT FOR SALE OF THE LAND.

By failing to tender the purchase price defendant argues that plaintiffs unilaterally rescinded the contract. To prove his position, counsel for defendant sought to have William C. Patsch, son of the deceased, C. W. Patsch, testify about certain oral statements made to his father by plaintiffs. Certainly, as the trial court held, such statements which were made out of the presence of William C. Patsch are properly excludable under the hearsay rule. Kemp v. Qualls,         Pa. Super.        , 473 A.2d 1369 (1984).

Even more disconcerting is the attempt by defendant to introduce testimony regarding the meaning of a color "coding" accounting method utilized by Ray E. Plunkett, a now-deceased employee of Patsch corporation, to maintain the ledger sheet on the transaction. Unless documentary evidence comes within an exception to the hearsay rule, it is excludable. Ceja v. Commonwealth Unemployment Compensation Board of Review, 41 Pa. Commw. 487, 399 A.2d 807 (1979) aff'd 493 Pa. 588, 427 A.2d 631 (1981). Because business records possess an inherent reliability, they are admissible if they come within the provisions set out in section (b) of the Uniform Business Records as Evidence Act, Act

of July 9, 1976, P. L. 586, No. 142 §2, 42 Pa. C. S. §6108(b):

(b)  General Rule. — A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

In view of his long standing association with the corporation and his personal experience with the ledger sheet, William C. Patsch was competent to testify as to certain entries made by Mr. Plunkett, i.e., the legal description, the amount of the down payment, the balance due and certain dates. In Re Indyk Estate, 488 Pa. 567, 413 A.2d 371 (1979). However, his testimony regarding the meaning of the colored dots was entirely unverified and speculative. Properly so, the trial court excluded that testimony and evidence. Hinkle v. Commonwealth Unemployment Board, 9 Pa. Commw. 512, 308 A.2d 173 (1973); Commonwealth, Insurance Department v. Ciervo, 24 Pa. Commw. 29, 353 A.2d 900 (1976); Fry v. Jimmy Wilson Garage, 45 Pa. D. & C. 2d 142 (1968).

Even if the oral statements had been admitted, to make a parol recission effective there must be a yielding up of possession or some equally unequivocal act. Allardice v. McCain, 375 Pa. 528, 101 A.2d 385 (1953). It is well-established that there can be an oral recission of a written contract to convey; but because Pennsylvania has traditionally been concerned with the factor of possession, some act accompanying the recission must occur. Brownsfield's Executors v. Brownfield, 151 Pa. 565, 25 A.

92 (1892); 42 ALR 3d 242, 254. In the absence of an act accompanying the rescission which leaves "no doubt as to intent, such as the yielding up of possession or the cancellation of the written articles of agreement," there can be no rescission. Plank v. Schifter, 85 F. Supp. 397, 399 (1949). In these circumstances, plaintiffs have proved that they have maintained continuous possession of the property since 1961. Though defendant argued that the residential move by plaintiffs in December of 1966 constituted a "yielding up" of possession, we find plaintiffs returned to the property on a regular basis to make improvements and cultivate their garden and, consequently, their claim for relief is affirmed.

## IV

## EQUITABLE DEFENSE OF LACHES

In the preliminary objections and throughout the trial, defendant once more has raised the issue of laches. Since plaintiffs took possession of the property in the fall of 1961, the court has on earlier occasions stated its concern for the failure of the Antoniettas to bring this action for specific performance before November 16, 1978. Even so, unlike the statute of limitations, laches does not operate solely by the passage of time. Scranton v. Manley, 13 Pa. Super. 439, 444 (1900). On the contrary, laches must be determined on the basis of a thorough examination of the facts. Lehner v. Montgomery, 180 Pa. Super. 493, 501, 119 A.2d 626, 631 (1956). Laches is an equitable defense which has been described as follows:

"The essence of laches is estoppel, . . . arising out of inexcusable delay in the bringing of suit which prejudices the defendant's rights to such an extent that it would be an injustice to permit suit to be

brought." (Citation omitted). Pennsylvania Turnpike Commission v. Atlantic Richfield Company, 31 Pa. Commw. 212, 213, 375 A.2d 890, 891 (1977) aff'd 482 Pa. 615, 394 A.2d 482, 491 (1978).

The court understands that with regard to certain testimony the deaths of C. W. Patsch and Ray E. Plunkett placed defendant at a disadvantage; however, in these circumstances plaintiffs are not guilty of laches. The continued peaceable possession of the plaintiffs from 1961 until the present is notice to the Patsch corporation of their claim to equitable rights. This long-standing rule of property was set out in Stolarick v. Stolarick, 241 Pa. Super. 498, 363 A.2d 793 (1976);

"It is well settled that "(l)aches will not be imputed to one in peaceable possession of land, for delay in resorting to a court of equity to establish his right to the legal title. The possession is notice to all, of the possessor's equitable rights, and he need only assert them when he may find occasion to do so." (Citations omitted) (Emphasis supplied.) Id. Pa. at 508, 363 A.2d at 798. Significantly, under Stolarick, the "party out of possession" has a duty to take some action. "Equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by lapse of years and death of parties." Kinter v. Commonwealth Trust Co., 274 Pa. 436, 437, 118 A.392, 393 (1922).

Having reviewed the case law and the record in this case, the court discerns no basis for the granting of relief. The other issues which have not been thoroughly discussed are lacking in merit. Martin v. Soblotney, 296 Pa. Super. 145, 442 A.2d 700 (1982).

## FINAL DECREE

And now, this June 13, 1984, the motions for post-trial relief are denied. Judgment granting spe-

cific performance is rendered in favor of plaintiffs, Peter Antonietta, Jr. and Barbara D. Antonietta, his wife, against defendant, Patsch Brothers, Inc.

Furthermore, the parties are directed to comply with provisions of the "Verdict" of the chancellor, and defendant is ordered and directed to prepare, acknowledge and deliver a good and sufficient deed in fee simple, free and clear of encumbrances to plaintiffs.