Crown Life Insurance Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Insurance, Respondent.

Argued September 13, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS,

BLATT, DiSALLE and CRAIG. Judges WILKINSON, JR. and MacPHAIL did not participate.

*Alfred G. Gillis,* with him *Butera, Bresnan, Beausang & Moyer,* for petitioner.

*John H. Isom,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, December 7, 1978:

Section 354 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 62, *as amended,* 40 P.S. §477b empowers the Insurance Commissioner of Pennsylvania (Commissioner) to screen life insurance policy forms and reject or approve them for sale in the Commonwealth.

Accordingly, Crown Life Insurance Company (Crown) submitted its policy form K6005 for approval. The Department of Insurance (Department) denied approval. After a hearing, the Commissioner issued an Order and Adjudication affirming the Department's rejection. Crown now petitions this Court to review that order.

There is no disagreement over what the policy says or purports to do. The controversy arises over possible consumer misunderstanding of it.

The policy is basically a hybrid of the two traditional whole life insurance modes, participating and non-participating.[1]

In policy form K6005, Crown sets the initial premium by making a very close assumption for bad experience, similar to the way a rate would be computed for non-participating policies. That approach results in a relatively low, immutable premium charge for the first three years.

However, beginning in the fourth year of coverage, the maximum premium rate is fixed under an assumption that takes into account a "contingency margin" for possible very bad future experience, similar to the way insurers calculate a participating policy rate. This feature could produce a significant jump in the premium amount charged after the initial three years.

---

[1] An insurer selling under the non-participating plan estimates the cost of the insurance based on the insurer's experience with regard to mortality, interest, expenses and lapse rate. Then, since the premium is guaranteed in the contract and cannot be altered, a contingency factor is added to each of the above amounts. A price is thus fixed which does not change. If the insurer's estimate were too low it will lose money; if it is too high, it will make money but may not be able to sell policies because competitors can sell the same product for less.

A participating policy is priced by making the same assumptions as above with an additional margin for very bad experience. This results in a price initially higher than a non-participating policy. This price will not vary. However, at the end of each year the insurer's experience is compared with the assumption, and if the insurer has made a profit, some of that profit may be returned to the policyholder in the form of a dividend. This dividend may bring the net price of the policy down to or below the level of a non-participating policy.

In re: Crown Life Insurance Company policy form K6005, Commissioner's opinion, No. P76-7-5, Case R. 9a-10a.

Importantly, these computations are made in advance, and therefore the policy clearly reveals that there will be an increased premium beginning in year four.

Were the foregoing the only premium provisions in the policy, it would be a "modified three" whole life policy, with which the Department apparently has no quarrel.

However, the problem arises because Crown plans, if possible, not to charge the maximum premium shown. Instead, after the initial three years of coverage, the insurer will then currently calculate the premium actually needed and charge only the resulting amount. Accordingly, the policy explains to the insured that, beginning in year four, the insurer in any year may adjust the premium downward for that year.

Moreover, in addition to the guaranteed maximum premium stated for the fourth and later years, the actual premium will not be higher than the actuarial equivalent of what it would then currently charge for an orthodox participating whole life plan.

The policy explains these points under the heading "Reduction of Premium Provision."[2]

---

[2] REDUCTION OF PREMIUM PROVISION

During the first 3 policy years premiums will be due and payable as specified in the schedule of Total Premiums as shown on Page 3.

The premiums payable under this policy during subsequent policy years shall be as specified in the schedule of Total Premiums shown on Page 3 of this policy unless reduced in accordance with this provision.

The Company may, from time to time, reduce the Total Premium applicable to any policy year after the third policy year. If the Total Premium applicable to any policy year is reduced, the original classification and insurance age of the life insured shall be used to determine the reduced Total Premium for this policy and all other policies of like

The Commissioner finds the reduction of premium provision to be objectionable. For that reason alone, the Commissioner has disapproved the proposed policy form.[3]

The Commissioner relies solely on the broad, general language of Section 354 of The Insurance Company Law as authority for his disapproval. He asserts that the statute gives him the discretion to make a threshold determination of unsuitability when, in his best judgment, he finds, as a matter of public policy and the best interests of potential policyholders, that the policy in question is not a "fit subject for approval."

---

benefits and provisions, and of the same classification and duration. The premiums required for any supplementary benefits that may be included in this policy will be as shown on Page 3, and will not be changed by the Company. In no event shall the Total Premium applicable to any policy year exceed the Total Premium specified in the schedule on Page 3 for that policy year.

In addition, the Total Premium applicable in any policy year after the third will not be greater than the actuarial equivalent of the premium then being charged by the Company for Participating Whole Life plan that does not have the Reduction of Premium Provision, using the original classification and insurance age of the life insured under this policy.

Any reduction in the Total Premium will be announced by the Company by written notice to the policyowner. Such notification shall be made prior to the anniversary date on which such reduction becomes effective.

Any reduction in any Total Premium will not alter the guaranteed values shown in the table on Page 3.

[3] The Commissioner agrees that otherwise the policy form contains all the provisions mandated by Section 410 of The Insurance Company Law of 1921, 40 P.S. §510, and that the disputed term is not in substance a provision prohibited under Section 411, 40 P.S. §511.

In part, Crown counters that, even if Section 354 vests such broad discretion in the Commissioner, he has manifestly abused it by rejecting this policy form.

We need not consider Crown's other arguments because we are convinced that, even confined to the narrow scope of review delineated by the applicable statute,[4] we cannot affirm the Commissioner's determination.

Our examination of the record consists of two inquiries: (1) whether the findings of fact are supported by substantial evidence; and, if so, (2) whether those facts in turn support the relevant conclusions of law made by the Commissioner. *Wallace v. Insurance Department*, 18 Pa. Commonwealth Ct. 267, 270, 334 A. 2d 830, 831-32 (1975).

Essentially the Commissioner set forth two related conclusions as supporting his disapproval of the reduction of premium provision: (1) it is impossible for potential purchasers intelligently to estimate the policy's cost or compare its cost with others; and therefore, (2) its cost can be easily misrepresented.

The core of Crown's case is that the net cost of this policy is no more unintelligible or unascertainable

---

[4] The Administrative Agency Law of 1978, 2 Pa. C.S. §704. This statute is substantially the same as §44 of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended, formerly* 71 P.S. §1710.44 repealed by the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, No. 53. The relevant provision limits the scope of review of an agency determination to whether or not constitutional rights were violated, errors of law were committed or findings of fact were not supported by substantial evidence. That the Court might not agree with the agency determination is not of itself a sufficient ground for interference. *Insurance Department v. Saint Luke's Hospital*, 21 Pa. Commonwealth Ct. 10, 342 A.2d 773 (1975).

to a prospective policyholder than the net cost of participating policies, which are routinely approved. In both types of policies, the consumer can see a guaranteed maximum potential cash outlay, plus the chance of some reduction either through part of his expenditures being returned to him in the form of a dividend or, as the proposed policy form provides, through the expenditure being lowered by premium reduction. In short, both types of policy forms tell the consumer in black and white what the maximum cost will be, plus the possibility that the cost may be less.

Much of the Department's testimony relates to the possibility that solicitors selling this policy will convince purchasers to disregard the maximum premium figure. Therefore the Commissioner concludes that the policy can be easily misrepresented.

Common logic requires us to agree with Crown that the Commissioner could as easly visualize potential misrepresentation in the sale of participating policies. As Crown's brief states, agents could assure customers that dividend projections are conservatively estimated or guaranteed, just as readily as unjustified promises of premium reductions could be made with respect to the policy form in question.

Therefore, unless the Commissioner is prepared to subject participating policy forms to like condemnation, we see no reasonable basis for disapproving this form on the basis of anticipating misrepresentation.

Of great significance is Crown's uncontradicted evidence that participating life insurance rates have declined over the years, with the result that holders of such policies, seeing current rates drop below the fixed rates in their policies, have been motivated to replace such older policies, but subject to the difficulties and costs that attend such replacement.

The Commissioner himself observed that Crown enjoys a good reputation in the insurance field and that his decision might well be different were he to consider whether or not only Crown should be permitted to sell this policy.

The Department's rebuttal evidence consisted of no more than speculation about possible misrepresentation by some hypothetical unscrupulous agent. Although the Commissioner's reservations are understandable, they do not rise to the level of fact to rebut Crown's testimony as to its actual experience with this type of policy.

The conclusion that this policy has a peculiar potential to be misrepresented is dependent upon the conclusion that "it is impossible for a potential purchaser to make an intelligent estimate of . . . likely cost." Conclusions of Law 3(c) and (d). Both conclusions, in turn, are related to the finding of fact that there exists "no adequate means of price comparison." Finding of Fact 9.

At the same time, Finding of Fact 8 says that the "reduction of premium provision is similar in effect to the dividend provision of a participating policy." In the light of Finding 8, we conclude that Finding 9 is not one which could be reasonably reached from the evidence and its inferences. Substantial evidence must be that which " 'a reasonable mind would accept to support a conclusion.' " *A. P. Weaver & Sons v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 499, 503, 284 A.2d 515, 517 (1971).

In short, we find in the record no substantial evidence on which to base Finding of Fact 9, that there is "no adequate means of price comparison." The Department offered no evidence in support of that finding having the substance of the fact of the similarity of the proposed policy with the familiar par-

ticipating policy, a similarity confirmed by Finding of Fact 8.

The Commissioner rejected Crown's proffered disclosure statement form, without discussing the proposal to supplement it with a conventional surrender comparison index and a revised surrender comparison index.[5] The Commissioner's view was that the disclosure statement for the proposed policy could not be as informative as those for participating policies because the company has no history with this kind of policy similar to a dividend history. Aside from the point that no such history can develop in Pennsylvania unless the policy form is allowed to operate here, the record contains evidence that Crown now has a history of this type of policy elsewhere upon which it can base projections of net cost for purposes such as a revised surrender comparison index.

Therefore, because the key finding of fact is contradicted by the finding as to similarity and not supported by any substantial evidence, we find no basis for the condemning conclusions as to cost estimating, cost comparison and potential misrepresentation.

We are constrained to believe that, in connection with approval of the proposed policy form, the Commissioner and the Department could require it to be accompanied by forms of disclosure statement and

---

[5] At or before the time an application for life insurance is signed, a prospective purchaser must be provided a Disclosure Statement which sets forth, among other things, the premium amounts due. In the case of participating policies, current dividends may also be projected with the caution that they are not guaranteed. Regulations governing this statement are found at 31 Pa. Code §83, and Appendix A thereto shows a model disclosure statement. A model Surrender Comparison Index Disclosure Statement is found at Appendix B to 31 Pa. Code §83. *See also*: *Pennsylvania Association of Life Underwriters v. Department of Insurance*, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977), *aff'd*        Pa.    , 393 A.2d 1131 (1978).

surrender comparison indices designed to be as informative as possible.

Hence, based on a careful review of the record, we sustain the appeal and will remand for appropriate action to approve the proposed policy form and supervise the related disclosure statement and surrender comparison indices.

### ORDER

AND Now, this 7th day of December, 1978, the appeal of Crown Life Insurance Company from the Insurance Commissioner's Order and Adjudication of May 3, 1977, No. P76-7-5 is sustained; and the record is remanded to the Insurance Department to approve the proposed policy form and to require appropriate disclosure statement and surrender comparison index forms in relation thereto.