Pennsylvania State Association of Township Supervisors, Petitioner v. Commonwealth of Pennsylvania, Insurance Department and William J. Sheppard, Insurance Commissioner, Respondents. Pennsylvania Compensation Rating Bureau, Intervenor.

Argued February 6, 1980, before President Judge
Bowman and Judges Crumlish, Jr., Wilkinson, Jr.,
Mencer, Blatt, Craig and MacPhail. Judges Rogers
and Williams, Jr. did not participate.

*Thomas L. Wenger,* of *Wix, Wenger & Weidner,*
for petitioner.

*David T. Kluz,* Assistant Attorney General, with
him *Norman J. Watkins,* Deputy Attorney General,
and *Edward G. Biester, Jr.,* Attorney General, for re-
spondents.

*Robert L. Pratter,* with him *Barbara Adams* and
*A. John May,* of *Duane, Morris & Heckscher,* for in-
tervenor.

OPINION BY JUDGE MACPHAIL, March 19, 1980:

The Pennsylvania State Association of Township Supervisors (Association), a statutorily authorized association of governments of townships of the second class in Pennsylvania,[1] appeals to this Court from an adjudication and order of the Pennsylvania Insurance Commissioner (Commissioner) granting a Workmen's Compensation Insurance Premium Rate Proposal filed by the Pennsylvania Compensation Rating Bureau (Bureau). The Bureau, a private association consisting of 232 private insurers and the State Workmen's Insurance Fund, has intervened in this appeal.[2] The Association raises three issues for our consideration: (1) whether the administrative proceeding resulting in the challenged order was tainted by an impermissible commingling of prosecutorial and judicial functions, (2) whether the Commissioner's review of the proposed rate filing was "adequate and sufficient," and (3) whether the exercise of the rate making function by the Commissioner constituted an improper delegation of the legislative function. For the reasons which follow, we affirm.

---

[1] Section 610 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65610, authorizes the formation of the State Association of Township Supervisors.

[2] Subsequent to oral argument on this appeal, the Bureau filed a motion to dismiss alleging that the case was moot. It based its petition on an order entered by the Commissioner on October 3, 1979 which, *inter alia*, modified the premium rates set in the order at issue here. The Association joined in the settlement agreement supporting the order. We do not agree that the order from which the Association appealed is moot. First, we note that the October, 1979 order merely modifies the prior order effective October 1, 1979. It does not affect the premium rate retroactively as could happen were we to decide in the Association's favor here. Furthermore, paragraph 8 of the October, 1979 order specifically states that the settlement "is without prejudice to any party in the matter being litigated at 2954 Commonwealth Docket 1978." The issues presented to us are not moot and we will decide them on their merits.

Section 654 of The Insurance Company Law of 1921 (Act), Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. §814, sets forth the statutory scheme concerning the classification of risks, underwriting rules, premium rates, and schedule and merit rate plans for insurance of employers and employees required pursuant to various statutory insurance plans. Here we are concerned with proposed premium rates for workmen's compensation insurance. Such rates are to be filed annually by rating bureaus which are subject to the supervision and examination of the Commissioner. Proposed rates are subject to the approval of the Commissioner who is authorized by Section 654 to modify, amend, or approve them. No insurance policy may issue except in accordance with rates proposed by a bureau and approved by the Commissioner. *Pennsylvania Coal Mining Association v. Insurance Department,* 471 Pa. 437, 443, 370 A.2d 685, 688 (1977); *Insurance Department v. Pennsylvania Coal Mining Association,* 26 Pa. Commonwealth Ct. 348, 352-53, 363 A.2d 823, 825 (1976).

On June 28, 1978, the Bureau filed proposed rates requesting a rate increase of 35.3 per cent for workmen's compensation insurance premiums. Notice of the filing was published at 8 Pa. B. 1963 (1978). The filing was amended on August 9, 1978 to reduce the premium increase requested to 34.9 per cent. Notice of the amended filing was given at 8 Pa. B. 2326 (1978). The monetary amount of the proposed increase was $244,900,000. A formal rate hearing was scheduled to begin before Hearing Examiner Albert J. Strohecker, III on August 29, 1978. Numerous Petitions for Intervention, including one by the Association, were filed by employers who would be affected by the proposed rate increase. Before the final order was entered by the Commissioner, all Intervenors, with the exception of the Association, had withdrawn

or were eliminated from these proceedings. Public hearings on the proposed increase were held on August 29 and 30, 1978. On September 1, 1978, the Commissioner entered an interlocutory order modifying the filing and granting a rate increase of $183,000,000. Following the entry of the interlocutory order, the Hearing Examiner conducted at least eight more days of hearings on the proposed rate increase. The Association was at all times represented by counsel at the hearings. The Association, however, presented no direct testimony and cross-examined only the witness appearing on behalf of the Pennsylvania Insurance Department (Department). It did not cross-examine the Bureau's witness who testified extensively in support of the rate increase, nor did it submit a brief following the close of the hearings. The Commissioner entered the order here at issue on November 28, 1978 and on December 27, 1978, the Association filed its Petition for Review with this Court.

Before addressing the Association's arguments, we must consider the Bureau's contention that the Association "failed to exhaust its administrative remedies" and, therefore, is entitled to no judicial relief. In essence, the Bureau argues that by failing to make appropriate motions and objections before the Hearing Examiner, by playing a limited role in the hearings, and by failing to file a brief before the Commissioner, the Association has waived the issues it now raises in this appeal. The Bureau's contention is arguably meritorious as to the commingling issue but because of the circumstances evident on the record, we choose to decide the issue on its merits.

The issue of an impermissible commingling of functions was first raised orally by counsel for Intervenor Pennsylvania Builders Association (PBA). At that time, the Association orally joined PBA's objection. The Hearing Examiner instructed PBA to make its

objection in writing and it did so. The record does not indicate that the Association joined in the written motion. Intervenor PBA later settled with the Bureau and the Department and withdrew from the proceedings. We could conceivably hold that when PBA withdrew, the commingling objection was also withdrawn, thereby eliminating that issue from the Commissioner's and, subsequently our, consideration. In fairness to all of the parties, however, we believe that the Association might have relied on PBA's objection as preserving the issue, thereby explaining its failure to object as well. We will treat the issue as preserved and we will decide it on its merits.[3]

The Association asserts that its due process rights were violated because both the Hearing Examiner presiding over these rate proceedings and counsel representing the Department in the proceedings were under the supervision of the Department's Chief Counsel. The Association argues that this represents a commingling of prosecutorial and judicial functions such as was condemned by the decisions in *Department of Insurance v. American Bankers Insurance Co. of Florida*, 26 Pa. Commonwealth Ct. 189, 363 A.2d 874 (1976), *aff'd*, 478 Pa. 532, 387 A.2d 449 (1978). There are two flaws in the Association's argument.

First, the *American Bankers* case and other cases dealing with the commingling question actually involved a situation where a *prosecution* occurred, that is, where there was an alleged violation of a law or regulation.[4] In such a situation, the two roles may be

---

[3] We caution counsel that they are responsible for making proper objections and raising issues at the appropriate times in all proceedings and that we are not inclined to disregard the Court's waiver rules or to allow such appeals except in extraordinary cases.

[4] *See, e.g., Romano v. Pennsylvania Insurance Commissioner*, 45 Pa. Commonwealth Ct. 19, 404 A.2d 758 (1979) (violation of insurance law) ; *Tighe v. State Board of Nurse Examiners*, 40 Pa.

classified as prosecutory and adjudicatory. Here, no such situation exists.

The sole purpose for the hearing in this case was to gather evidence to be considered by the Commissioner in determining whether the proposed workmen's compensation insurance premium rates were inadequate or unfairly discriminatory. By definition then, it was an investigatory rather than an adjudicatory proceeding. The statement of counsel for the Department that he was "sitting as the proponent of the Insurance Department's cause in this particular matter" does not change the complexion of the proceeding. It merely indicates that he represented the Department, whatever its position on the rates would be. He was not acting in a prosecutorial manner and the Hearing Examiner, whose function was to preside over the hearings and make a record for the Commissioner, was not acting in an adjudicatory manner. The decisions in *American Bankers* and other cases involving commingling, then, are inapposite to the facts before us.

Even if this were a proper case for the consideration of the commingling issue, we would find no error here. It is not a *per se* violation of due process for two persons from the same agency or department to appear in different roles in the same proceeding. Such a situation does not constitute an unfair tribunal so long as the functions performed by the two are adequately separated. *Berman v. Pennsylvania State Police*, 37 Pa. Commonwealth Ct. 559, 564, 391 A.2d 715, 718 (1978). *See also Tighe v. State Board of Nurse Ex-*

Commonwealth Ct. 367, 397 A.2d 1261 (1979) (violation of professional nursing law) ; *Department of Insurance v. American Bankers Insurance Co. of Florida*, 26 Pa. Commonwealth Ct. 189, 363 A.2d 874 (1976), *aff'd*, 478 Pa. 532, 387 A.2d 449 (1978) (violation of insurance law) ; *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976) (violation of Pennsylvania Human Relations Act).

*aminers,* 40 Pa. Commonwealth Ct. 367, 369, 397 A.2d 1261, 1262 (1979). Such an adequate separation was present in this case. Hearing Examiner Strohecker was an Assistant Attorney General under the control of the Chief Counsel for the Department.[5] He was one of two Department Examiners assigned to hear rate cases and prepare records for decision by the Commissioner. He neither supervised nor was supervised by the Department's attorney in this action. He did discuss procedural aspects of the proceedings with counsel for the Department and separately with the Department's Chief Counsel, but he never discussed the substantive aspects of the matter with either. The *only* connection between the Hearing Examiner and the Department's counsel was that they were both subject to supervision by the Department's Chief Counsel. Otherwise, their positions and functions were entirely separate. Their participation in these proceedings amounts to neither actual prejudice nor the appearance of prejudice to the Association and does not represent an impermissible commingling of functions. The Association must fail in its first argument.

The Association next argues that the Commissioner's review of the proposed rate filing was inadequate and insufficient under the requirements of Section 654 of the Act and Article II, Section 1 of the Constitution of Pennsylvania.[6] We interpret this to be a substantial evidence challenge. Substantial evidence, which is the standard of review applicable in proceedings such as these, *Crown Life Insurance Co. v. De-*

---

[5] Hearing Examiner Strohecker stated that he believed he was under the equal control of the Chief Counsel for the Department and the Attorney General. There was some dispute on the record as to whether he was supervised by the Attorney General.

[6] The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives.

*partment of Insurance,* 39 Pa. Commonwealth Ct. 94, 394 A.2d 1305 (1978), is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, *Katz v. Evening Bulletin,* 485 Pa. 536, 540, 403 A.2d 518, 520 (1979). Our review of the record in this case convinces us that the standard has been met.

The Association in its brief does not challenge any of the Commissioner's detailed findings of fact or conclusions of law, nor does it refer to evidence which the Commissioner might have considered and did not or should not have considered but did. Instead, the Association attacks the Commissioner for allegedly being unduly influenced by the Bureau (which, it asserts, is "well staffed, well funded, and extremely effective in pursuing the best economic interests of the companies that it represents") and the Department's witness for lacking the time, energy, and experience to advise the Commissioner on these proceedings. Neither of these allegations is supported on the record. As our Superior Court said in *Pennsylvania Insurance Department v. Philadelphia,* 196 Pa. Superior Ct. 221, 243, 173 A.2d 811, 822 (1961), "An examination of the record leaves no doubt that the commissioner fully performed his duty in this case by carefully examining the record, making findings thereon, discussing the evidence and making conclusions of law." We see no evidentiary basis for disturbing the Commissioner's order here.

Finally, the Association argues that the procedures by which the Bureau proposes and the Commissioner approves insurance premium rates violate the constitutional prohibition against the nondelegation of the legislative function found in Article II, Section I of the Constitution of Pennsylvania and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Clearly, they do not.

The legislature may not delegate its power to legislate. Where necessary, however, it may confer authority and discretion upon another body in connection with the execution of existing legislation. In order for such a legislative grant of authority or discretion to be valid, it must contain adequate standards to guide and restrain the exercise of the delegated administrative function. In determining whether adequate standards have been established, we are not limited to the letter of the law. We must look, as well, to the underlying purpose of the statute and to its reasonable effect. *Commonwealth v. Cherney*, 454 Pa. 285, 289-90, 312 A.2d 38, 40-41 (1973); *see also, Chartiers Valley Joint Schools v. Allegheny County Board of School Directors*, 418 Pa. 520, 529-30, 211 A.2d 487, 492-93 (1965) and cases therein cited.

The Association's argument that there has been an unconstitutional delegation of legislative power to the Bureau is totally without merit. In the context of this case, the Bureau's function, by the terms of Section 654 of the Act, is to annually *propose* premium rates for workmen's compensation insurance. The approval of such rates is solely within the power of the Commissioner. As Judge MENCER wrote in *Longwood Villa Nursing and Convalescent Home Appeal*, 26 Pa. Commonwealth Ct. 620, 623-24, 364 A.2d 976, 978 (1976), a case challenging the Bureau's authority to propose rate classifications, "A classification vesting in private persons the power to *participate* in administrative actions need not be constitutionally defective where the administrative function, as here, has been properly delegated." (Emphasis added.)

The only remaining question, then, is whether the administrative function was properly delegated to the Commissioner, that is, whether the legislature established adequate standards by which to guide the Com-

214

missioner in considering and approving rate proposals. We hold that it did. Section 654 of the Act sets forth two standards by which the Commissioner is to be guided. The Bureau, itself, must be approved by the Commissioner as "adequately equipped to compile rates on an equitable and impartial basis." In considering proposed premium rates, the Commissioner "may withdraw his approval whenever, in his judgment, the same is inadequate or discriminates unfairly between risks of essentially the same hazard." Section 654 vests a great deal of discretion in the Commissioner, but that does not mean that it is standardless. Guidelines such as "equitable," "impartial," "inadequate" and "discriminatory" are both appropriate and sufficient when dealing with the area of insurance. As the Superior Court said in *Pennsylvania Insurance Department v. Philadelphia* at 237-38, 173 A.2d at 819:

> Insurance rate making is a technical, complicated and involved procedure carried on by trained men. It is not an exact science. Judgment based upon a thorough knowledge of the problem must be applied. Courts cannot abdicate their duty to examine the evidence and the adjudication, and to interpret and apply the law, but they must recognize the value of the judgment of an Insurance Commissioner who is specializing in the field of insurance and the efficacy of an adjudication supported by evidence of experts who devoted a lifetime of service to rate making.

After considering the complex nature of insurance rate making, the standards to guide the Commissioner as set forth in Section 654, and the purpose and effect of the Act, we hold that Section 654 does not constitute an unconsitutional delegation of legislative power.

We have found no reason to reverse or modify the order of the Commissioner in this case. Accordingly, we affirm.

## ORDER

AND Now, this 19th day of March, 1980, the Order of the Insurance Commissioner with respect to Workmen's Compensation Proposal C-241, dated November 28, 1978, is affirmed.

President Judge BOWMAN did not participate in the decision in this case.