Phyllis Carney, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondent.

Magee Memorial Hospital, Intervenor.

Argued November 18, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Harold R. Berk,* with him *John Matrullo, Hovsepian and Sandler, P.C.,* for petitioner.

*Michael Hardiman,* Assistant General Counsel, for respondent.

No appearance for intervenor.

OPINION BY JUDGE ROGERS, January 25, 1983:

Phyllis Carney seeks review of an order of the Pennsylvania Human Relations Commission (PHRC), entered on the recommendation of an examiner following a formal hearing conducted on January 30, 1981, directing that the proceeding initiated by her sex discrimination complaint be closed for failure to establish probable cause to credit the allegations contained in the complaint. Two issues are raised: whether the procedure followed at the hearing denied to the petitioner due process of the law, and whether the record made at the hearing sufficiently supports the PHRC's determination.

The facts giving rise to the petitioner's complaint are disputed in many particulars but may be cast in general terms as follows. The petitioner was hired in September, 1969, as an executive secretary to Mr. Paul Labrecht, then the Administrator of the Magee Convalescent Hospital in Philadelphia. At this time the hospital's organizational structure for purposes of its daily operations was divided into a medical and a nonmedical component; command of the former being entrusted to one Dr. Parry, the Medical Director, and command of the latter being in the hands of the Administrator, Mr. Labrecht.

About nine months later, the petitioner was elevated to the position of administrative assistant which promotion entailed duties in addition to the secretarial functions previously performed in the areas of personnel relations; recruiting, interviewing, and initial training of new employees; and the preparation and compilation of documents necessary to the hospital's continued accreditation.

In February, 1972 Mr. Labrecht was discharged from his position as hospital administrator. Thereafter for a period of about one year, until the hiring of one Joseph Rainville in January, 1973, the hospital was without a chief executive officer with respect to its non-medical domain. During this interregnum, the petitioner continued to perform her functions described above. Approximately two weeks after his appointment, Mr. Rainville discharged the petitioner giving variously as reasons for the discharge a proposed reorganization of the hospital's administrative staff and the inability of the petitioner to take dictation by the shorthand method—a skill Mr. Rainville assertedly required of his personal secretary. After the petitioner's discharge there followed nearly a decade of administrative and judicial inquiry into the particulars of and foundation for the petitioner's charge that the proffered reasons for discharge were mere pretext and that, in fact, Mr. Rainville was motivated by a design to discriminate against her on account of her sex.

The petitioner filed the complaint here at issue on February 20, 1973, alleging that on or about February 2, 1973, the respondent hospital

> terminated her from her position as Administrative Assistant because of her SEX, FEMALE. It is further alleged that while employed as Administrative Assistant [the petitioner] was compensated at a lower rate than

MALE EMPLOYEES with similar responsibilities. It is additionally alleged that respondent facility is not properly posted as per the PENNSYLVANIA HUMAN RELATIONS ACT.[1]

Documentary evidence admitted during the January, 1981 hearing reveals that after the docketing of the petitioner's complaint, the case was assigned to two of the PHRC's field representatives for preliminary investigation; that these members of the PHRC's staff conducted interviews with the petitioner and with Joseph Rainville, the current hospital administrator; and that on the basis of the interviews the PHRC's staff concluded that the petitioner was unlikely to be able to establish even a prima facie case of sex based discrimination with respect either to her discharge or in the terms and conditions of her employment because the person hired to replace her as Mr. Rainville's assistant was female and because, during the petitioner's tenure, the most nearly comparable fellow employee was also a woman; this being the administrative assistant to the hospital's medical director, whose rate of remuneration was roughly equivalent to that of the petitioner. On this basis the PHRC staff recommended that the case be closed, a recommendation that was accepted by the PHRC and communicated to the petitioner by letter from its executive director, Homer C. Floyd, dated July 7, 1975.

The petitioner, by her counsel, then requested reconsideration of the decision to close the case asserting that the petitioner's administrative assistant position was not fairly comparable to that of the administrative assistant in service to the hospital's medical director and that the petitioner's replacement was not a

---

[1] As to this last charge having to do with "posting," no evidence was presented and the petitioner has apparently abandoned any contention that the hospital acted unlawfully in this regard.

woman but was, instead, a Mr. Thomas Martin whose rate of pay was significantly in excess of that paid to the petitioner prior to her discharge.

Reconsideration was granted and the investigation reopened. Employees of the hospital were interviewed and, in some instances, re-interviewed and documentary evidence including personnel and payroll records were examined by a third field representative of the PHRC. By a written decision dated May 27, 1977, encompassing a Case Closing Recommendation, as well as a multi-page Case Analysis Summary containing twenty-one fully documented references to evidentiary sources probative on the matter of the petitioner's charges, over fifty appended exhibits and a narrative summary and conclusion, the PHRC staff again recommended that the case be closed on the ground that the extensive investigation had disclosed no credible factual basis for the petitioner's allegations. The PHRC's regional counsel reviewed the record and concurred in the recommendation. By letter dated August 4, 1977, Homer Floyd notified the petitioner that the PHRC had again acted to dismiss her complaint.

By means of a Petition for Review in the nature of an application for a Writ of Mandamus addressed to the original jurisdiction of this Court, the petitioner next sought an order directing the PHRC to conduct a formal hearing on the matter of whether there was probable cause to believe that she had been the victim of sex based discrimination. The PHRC's preliminary objections to this application were overturned by our order dated August 9, 1979. Apparently, the PHRC made no responsive answer to the petitioner's application for a hearing but, instead, acquiesced in the petitioner's demand for a formal hearing which, as we have indicated, was conducted in January, 1981.[2]

---

[2] Our order and accompanying opinion are reported at 45 Pa. Commonwealth Ct. 10, 404 A.2d 761 (1979).

An historical recitation of this detail may help to place in some perspective the petitioner's first contention on the occasion of the instant appeal that the PHRC has refused to devote to her cause the procedural attention to which she is due. On the contrary, our review of the record convinces us that the procedures employed by the PHRC in the investigation and preliminary resolution of the petitioner's allegations were most objective and thorough.

In particular, the petitioner, citing the opinion of this Court in *Pennsylvania Human Relations Commission v. Feeser*, 20 Pa. Commonwealth Ct. 406, 341 A.2d 584 (1975), contends that she was deprived of due process as a matter of law when, during the January, 1981, hearing, one of the PHRC's assistant general counsel served as examiner while another assistant general counsel served to introduce into the record documents recording the PHRC's previous actions in the case. Of course, the Supreme Court was not persuaded by our reasoning in *Feeser* and, as the opinion in support of that court's order makes clear, some actual impropriety must at least be alleged before an agency's use in this manner of its staff attorneys will be held to violate the constitution. *Pennsylvania Human Relations Commission v. Feeser*, 469 Pa. 173, 364 A.2d 1324 (1976). *See also Miller v. Department of Transportation*, 59 Pa. Commonwealth Ct. 446, 429 A.2d 1278 (1981); *Pennsylvania State Association of Township Supervisors v. Insurance Department*, 50 Pa. Commonwealth Ct. 204, 412 A.2d 675 (1980); *Tighe v. State Board of Nurse Examiners*, 40 Pa. Commonwealth Ct. 367, 397 A.2d 1261 (1979). Here the petitioner expressly disavows any assertion that the PHRC's staff attorneys engaged in actual impropriety.

Moreover, no impropriety is revealed by the record which, instead, discloses that the role at the hearing

of counsel for the PHRC was quite limited and entirely proper. From the notes of testimony it appears that at the commencement of the hearing, assistant general counsel Claudette Spencer moved the admission of seven documents including the petitioner's complaint, the two letters previously described from Homer Floyd to the petitioner, the two Case Closing Recommendations of the PHRC, and two letters from the petitioner's counsel requesting, in each instance, reconsideration of the PHRC's decision to close the case. The petitioner's counsel objected only to the admission of the documentary appendices to the two Case Closing Recommendations and Ms. Spencer withdrew these documents. Thereafter, Ms. Spencer called no witnesses; engaged in only the most perfunctory cross-examination of witnesses called by the petitioner's counsel and by counsel for the hospital; objected on five occasions to the examination of witnesses by others, obtaining in each instance an unfavorable ruling by the hearing examiner; made no closing argument to the examiner; and sought at no time to advise or otherwise engage in colloquy with the examiner. We reject the contention that the hearing was constitutionally infirm.

The petitioner also challenges the PHRC's assessment of the evidence related to the allegations of her complaint. Although the stated focus of the challenge is as to whether certain factual findings contained in the PHRC opinion accompanying its July 2, 1981 order are "against the weight of the evidence," the petitioner's position must be that the PHRC capriciously disregarded evidence in support of her cause and, particularly, evidence establishing that she became the de facto hospital administrator following Mr. Labrecht's discharge and that her replacement was Mr. Thomas Martin. However, the evidence supporting these contentions was conflicting at best.

Dr. Parry, medical director of the hospital during the petitioner's tenure, testified that the notion of the petitioner's full assumption at any time of Mr. Labrecht's duties and responsibilities was "fantastic;" that in his view the petitioner served Mr. Labrecht in a primarily secretarial capacity analogous to that of the medical director's administrative assistant; that the routine responsibilities of Mr. Labrecht were performed following his departure not by the petitioner alone but by a number of persons including Mr. Martin, then the hospital's Comptroller; that Mr. Labrecht's administrative and policy making responsibilities were assumed not by the petitioner but by the medical director in direct consultation with the hospital's Board of Trustees; and that the petitioner's discharge was not discriminatory but was a consequence of the new administrator's requirement that his assistant be trained, as the petitioner was not, in the transcription of dictation by shorthand.

Moreover, the affidavits of one Patricia Racey, and of Thomas Martin, admitted into evidence at the January, 1981 hearing[3] directly refute the petitioner's contention that her duties were assumed by Mr. Martin and support the PHRC's conclusion that the petitioner's replacement with respect to her non-secretarial duties was, instead, a female member of Mr. Martin's secretarial staff. With respect to the petitioner's duties as personal secretary to the hospital administrator, it is conceded that her replacement was a woman hired by Mr. Rainville.

---

[3] Objections by the petitioner's counsel to the admission of these documents were overruled by the hearing examiner. It is not now argued that the examiner's ruling on the issue of the admissibility of the affidavits was in error. The objections interposed by the petitioner's counsel were that the affidavits were "self-serving" and were not a part of the evidence on which the PHRC's initial determination had been based.

The affidavit of Mr. Martin further establishes that he is a graduate of the Wharton School of the University of Pennsylvania with an extensive background in accounting and hospital administration whose job title at Magee included that of comptroller and, following an administrative reorganization, assistant administrator. His duties included primary responsibility for the financial management of the hospital, patient admissions, medical records, the departments of x-ray and laboratory studies, utilization review, and personnel matters. It was not a capricious disregard of the evidence for the PHRC to reject the petitioner's contention that in all of these capacities Mr. Martin was functioning as her replacement especially in the light of her testimony that she had not attended college and had, prior to her employment at Magee, a work history consisting of secretarial positions with no background in hospital administration. Neither was it capricious on this state of the record for the PHRC to reject the petitioner's contention that discrimination was established by proof that Mr. Martin's salary was substantially in excess of her own.

In conclusion, it must be emphasized that the issue now before us is whether the PHRC properly determined that there was no probable cause to believe the petitioner's allegation that she was the victim of sex based discrimination. With respect to this issue, the petitioner's termination was accomplished by Joseph Rainville and neither the extensive investigation by the PHRC, nor the formal hearing disclosed any evidence that Mr. Rainville was motivated by any factor other than the petitioner's inability to take shorthand. The petitioner has brought to our attention no evidence in this lengthy record which would support, much less compel, an inference that any of her supervisors at Magee harbored unlawful discriminatory motives and we reject as utterly frivolous the petitioner's

contention that even in the total absence of evidence of discrimination we must reverse the PHRC because there is conflicting evidence on some peripheral points as, for example, whether the petitioner was a "clerical" employee and to whom, precisely, each of her job responsibilities was assigned following her termination and the hospital's reorganization.[4]

Order affirmed.

### ORDER

AND Now, this 25th day of January, 1983, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is affirmed.

---

[4] It was the petitioner's claim that someone at Magee discriminated against her. In the whole of this record, the only evidence directly probative on the issue of discrimination is the petitioner's testimony that Dr. Parry, in conversation, expressed some reluctance on one occasion to hire a woman to replace Mr. Labrecht. But Dr. Parry was not the petitioner's supervisor and, so far as the record reveals, exercised no control over her work. Moreover, the position of employment then under discussion, Mr. Labrecht's replacement, was not one for which the petitioner was ever an applicant. In any event, Dr. Parry denied ever having expressed any reluctance to hire women and pointed out that most of the professional staff at Magee are women including not only the nursing staff but the physicians (all but one is a woman) and the department administrators (all women). The determination of credibility and the resolution of conflicts in the testimony is for the PHRC.