612 A.2d 1094

**Felix TERMINI, Petitioner,**

v.

**DEPARTMENT OF INSURANCE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 1992.

Decided May 4, 1992.

Publication Ordered July 16, 1992.

James D. Rosen, for petitioner.

Arthur F. McNulty, Dept. Counsel, for respondent.

Before DOYLE and FRIEDMAN, JJ., and LEDERER, Senior Judge.

DOYLE, Judge.

This is an appeal by Felix Termini from an order of the Insurance Commissioner directing that Termini's insurance agent's license be suspended for a period of twelve months and that Termini pay a civil penalty totalling three thousand dollars.

After conducting a hearing, the Commissioner found that Termini sold insurance for both the Durham Life Insurance Co. (Durham) and the United Insurance Co. of America (United) during the period from February 14, 1989 to July 24, 1989, despite the fact that his contract with each company required that he sell insurance only on behalf of that company. During the six months that he worked for Durham, Termini received $700.00 a week in guaranteed salary. He left his employment with Durham after it was discovered that he had

been writing insurance on behalf of both United and Durham during the same time period.

The Commissioner further found that on or about April 26, 1989, Termini submitted to United life insurance applications on behalf of Diana Baldwin and Ian Baldwin, her son. In May of 1989 Termini then submitted to Durham life insurance applications on behalf of Diana and Ian Baldwin without Ms. Baldwin's knowledge or consent. The applications submitted to Durham were signed by Termini and contained his certification that he had completed the applications on information provided by Ms. Baldwin. Further, the Commissioner found that Termini paid the premiums for these applications.

Based upon these findings, the Commissioner determined that Termini, by engaging in dual exclusive employment, had demonstrated his "unworthiness" to hold an insurance agent's license under Section 603 of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 233 (Insurance Department Act) and 31 Pa.Code § 33.7(a)(7). She further determined that Termini had, by submitting false life insurance applications for the Baldwins, engaged in unfair insurance practices in violation of Section 1171.5(a)(2) and (12) of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. § 1171.5(a)(2) and (12). Accordingly, she assessed the one-year suspension and the civil penalty. Termini's appeal to this Court followed.

On appeal Termini raises several issues for our consideration which we shall deal with seriatim, keeping in mind that our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence and whether the Commissioner has committed a legal error. *Insurance Department v. Ciervo,* 24 Pa.Cmwlth.Ct. 29, 353 A.2d 900 (1976). The Commissioner is the ultimate fact finder and it is her duty to evaluate credibility, weigh the evidence and resolve evidentiary conflicts. *Novak v. Insurance Department,* 106 Cmwlth.Ct. 232, 525 A.2d 1258 (1987). Further, she is given broad discretion in imposing penalties. *Id.*

▐ Termini first contends that as a matter of law dual exclusive employment in violation of a collective bargaining agreement does not constitute "unworthiness" to be an agent. He bases his argument at least in part on the Commissioner's recognition that this issue is one of first impression. To the extent Termini relies upon a first impression argument, we must reject such a theory outright. Otherwise, even the most vile of acts would be beyond the Commissioner's sanction if the insurance agent involved were fortuitously the first to be caught for committing an act not specifically enumerated in the statute but which demonstrates unworthiness.

We must further determine, however, whether acting in a dual exclusive capacity is conduct covered by Section 603 of the Insurance Department Act. Section 603, which deals with issuing agents' licenses, provides in pertinent part:

(a) Before any such license is granted, the applicant shall first make answer, in writing and under oath, to interrogatories on forms and supplements such as the Insurance Commissioner shall prepare and submit, which answers shall be vouched for by indorsement of the company, association, or exchange interested, and *to the effect that the applicant is of good business reputation, and of experience in underwriting, other than soliciting, and is worthy of a license:* ... When the Insurance Commissioner is satisfied that the applicant is worthy of license, and that he is reasonably familiar with provisions of the insurance law of this Commonwealth, [she] shall issue a license....

While at first blush this language appears to concern only the initial grant of a license, we have upheld the Commissioner's revocation of an existing license under this provision. *See, e.g., Fumo v. Insurance Department,* 58 Pa.Cmwlth.Ct. 392, 427 A.2d 1259 (1981). Accordingly, since this provision is applicable to the case at bar, we now must decide whether, as a matter of law, Termini's dual exclusive employment activity rendered him unworthy of a license. In *Fumo* Judge Blatt recognized that the statutory terms "good business reputation" and "worthy of a license" are "at best, inexact," but held that (a) because insurance is a highly regulated industry, (b)

because drafting a statute general enough to provide effective regulation, yet specific enough to fulfill constitutional mandates is difficult, (c) and because the Commissioner had validly promulgated regulations fleshing out the statutory criteria appearing in Section 603, the act withstood constitutional challenge on vagueness grounds. The regulation Judge Blatt relied on in *Fumo* is the one the Commissioner also relies on in the case at bar. It provides in pertinent part:

> (a) The Department may deny an application for agent's or broker's license if any of the following are shown to have occurred:
>
> . . . .
>
> (7) The applicant does not possess the professional competence and general fitness required for the doing of the business of insurance. Such determination will be made after thorough examination of the pertinent information and documents available to the Department which pertain to the honesty, reliability, efficiency, educational training and business experience, and reputation of the applicant. . . .

31 Pa.Code § 33.7.

Termini produced a witness who testified that he was a good agent, *i.e.*, he produced a lot of business. This witness explained that Termini had been a leading sales representative for United in 1989, as well as having a high percentage of business that stayed on the books for at least four months. Further, Termini was honored as agent of the year for 1990. Termini claims that the Commissioner ignored all of this evidence when adjudicating his case. We disagree. This evidence does tend to establish that Termini had good business acumen. But is does not disprove that he knowingly entered into dual exclusive employment contracts, a fact that would call his honesty into question. And, Termini himself testified on direct examination that he had a different reporting date with Durham than did other agents so that "no other agents would find out that I would be working with Durham and then it would get back to United." N.T. 107. This indicates that Termini himself knew that what he was doing

was not above board. We thus conclude that Termini's conduct demonstrated a lack of honesty which would serve to justify a penalty for violation of Section 603 of the Insurance Department Act and Regulation 33.7, 31 Pa.Code § 33.7.

 We now consider whether, as Termini asserts, the record does not support a finding the Termini placed insureds with insurers by making false applications [1] and by "fronting" premiums (i.e., advancing the money for his clients' premium payments). At the hearing Ms. Baldwin was asked to look at life insurance applications completed by Termini on behalf of herself and her son. Two were on United forms and she identified the one as containing her signature and the other as containing a signature reading "Ian Baldwin" but as having been signed by Termini with her permission. She then examined two applications on Durham forms and claimed that the signatures reading respectively "Diana Baldwin" and "Ian Baldwin" were not those of her and her son and that she had never had insurance with Durham. This testimony constitutes substantial evidence to support the finding that Termini submitted false applications on behalf of the Baldwins to Durham. While Termini asserts that Ms. Baldwin's testimony was equivocal, we cannot agree and hold that it possessed sufficient legal certainty. Moreover, to the extent the Commissioner chose to credit that testimony over Termini's contradictory assertions, she acted within her discretion. *Novak*. Thus, these actions are no basis for a reversal by the Court.

Ms. Baldwin did not testify specifically that Termini had fronted premiums for the Durham applications; however, she

1. Section 1171.5(a) of the Unfair Insurance Practices Act, 40 P.S. § 1171.5(a), provides that unfair insurance practices or unfair methods of competition include:

> (2) Making, issuing, publishing or circulating in any manner an advertisement, announcement or statement containing any representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business which is untrue, deceptive or misleading.

> . . . .

> (12) Making false or fraudulent statements or representations on or relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money or other benefit from any insurers, agent, broker or individual.

did state that she had never had insurance with Durham (N.T. 91). And, another witness, Mr. James Cawley, who is Durham's Manager, testified that Termini had told him that he (Termini) had used his own money in submitting applications to Durham. N.T. 51. Moreover, the fact remains that the Baldwin's Durham applications triggered the issuance of the policies to the Baldwins. Based on Cawley's testimony and the fact that Durham policies were issued to the Baldwins without them having purchased them, we hold that the Commissioner properly exercised her discretion when she inferred that Termini had fronted premiums for the Baldwins' Durham policies.

While Termini argues that he could receive no benefit for fronting premiums, the record demonstrates otherwise. Termini's arrangement with Durham provided that after six months with that company his contract was to be based upon his initial six-month production. N.T. 50–51. Therefore, he would achieve long-term benefits by generating more policies for Durham during his initial six months there.

Finally, Termini asserts that the penalty imposed here was too harsh. We note first that the Department had sought to revoke Termini's license. The Commissioner, however, ordered only a one-year suspension and a civil fine. This alone evidences some discretion on her part. Moreover, Termini's argument for leniency, based on his assertion that no one was injured by his actions, has previously been rejected by this Court. We stated in *Redcay v. Insurance Commissioner,* 116 Pa.Cmwlth.Ct. 425, 541 A.2d 1189 (1988), that an argument that maximum sanctions were justified only where the public was actually harmed was "specious." *See also Fumo* (no specific harm to public). While here the maximum penalty was not imposed, we nonetheless believe the "no harm, no foul" argument to be without merit.

Having determined that the Commissioner's necessary findings are supported by substantial evidence and that she committed no legal error or constitutional violation, we affirm her order.

## ORDER

NOW, May 4, 1992, the order of the Insurance Commissioner in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., concurs in result only.