Timothy A. JUDSON, Petitioner,

v.

**INSURANCE DEPARTMENT,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued May 9, 1995.

Decided Aug. 1, 1995.

Publication Ordered Sept. 27, 1995.

Jeffrey D. Servin, Philadelphia, for petitioner.

Scott M. Schwartz, Department Counsel, Hershey, for respondent.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELLEY, Judge.

Timothy A. Judson appeals an order of the Insurance Commissioner of Pennsylvania which (1) revoked his agent's license; and (2) ordered him to pay fines totalling $4,000 for having violated The Insurance Department Act of 1921 (Act).[1] We affirm.

Judson was a licensed insurance agent residing in Sellersville, Pennsylvania. On December 13, 1990, a Consent Order was entered into by Insurance Commissioner Foster and Judson.[2] The Consent Order provid-

---

1. Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 1—324.13.

2. The Consent Order was based upon Judson's violations of sections 604 and 633.1 of the Act,

40 P.S. §§ 234 and 273.1. Section 604 of the Act prohibited insurance agents from transacting business within this Commonwealth without a license as required by the Act. 40 P.S. § 234. Commissioner Foster found that Judson's activi-

ed for the immediate suspension of Judson's license if the Pennsylvania Department of Insurance (Department) determined that Judson had not complied with the terms of the Consent Order or had violated any other insurance laws.[3] The Consent Order also stated that Judson would be entitled to a hearing if the Department suspended his license.[4]

By letter dated February 3, 1993, Deputy Insurance Commissioner Buzby notified Judson that his license was being suspended for alleged violations of the terms of the Consent Order and insurance laws. Judson requested a hearing which was held on June 14 and 15, 1993.

Insurance Commissioner Maleski[5] (Commissioner) made the following relevant findings of fact. Judson was a licensed agent authorized to sell insurance on behalf of Pilgrim Life Insurance Company (Pilgrim) and United Security Assurance Company of Pennsylvania (USAC), duly-licensed Pennsylvania insurers who wrote long-term nursing care insurance.[6]

In May 1991, Judson solicited Elizabeth A. Zeigler, age 85, for the sale of long-term nursing care insurance. At the time Judson solicited Zeigler, she had a policy in force with American Fidelity & Liberty Insurance Company (American Fidelity). Judson falsely represented to Zeigler that he could obtain for her a refund of the premium which she had already paid for her coverage with American Fidelity. Subsequent to the solicitation of Zeigler, the insurance coverage which she had applied for through Judson was altered without her knowledge. Judson never explained to her the changes in her coverage and could not explain who had made the alterations.

In June 1991, Judson solicited Margaret Unangst, age 81, for the sale of long-term nursing care insurance. As a result of the solicitation, Unangst executed an application for long-term nursing care insurance with USAC. In August 1991, Unangst sent a letter of complaint to USAC regarding the conduct of Judson. During the course of his solicitation, Judson had misrepresented the coverage he was writing for Unangst, and he had failed to explain to her the policy limitations and restrictions. Moreover, Judson had falsely stated to Unangst that American Fidelity was going out of business.

In January 1992, Judson solicited Valentine and Violet Pfister, ages 81 and 80, respectively, for the sale of long-term nursing care insurance. At the time of the solicitation, the Pfisters had long-term nursing care insurance in force with American Fidelity. As the result of Judson's representations, the Pfisters applied for insurance with Pilgrim and gave Judson a check for $3,690.85. During the course of his solicitation of the Pfisters, Judson misrepresented the entity on whose behalf he was working and misrepresented to the Pfisters that he was updating their American Fidelity policy. In April 1992, Violet Pfister sent a complaint letter to Pilgrim wherein she sought a refund of the premium she had paid for the policy purchased through Judson. Violet Pfister then

ties had violated this provision of the Act. Section 633.1 of the Act and 31 Pa.Code § 31.31 prohibited insurance agents from commingling insurance premiums with their own funds in any manner not reasonably ascertainable from the agent's books of accounts and records. 40 P.S. § 273.1; 31 Pa.Code § 31.31. Commissioner Foster found that Judson's activities had also violated this provision of the Act and related regulations.

3. The Department's right to act in the event that Judson violated any insurance laws was limited to a period of five years from the date of the Consent Order.

4. If a hearing was held, Judson would have the burden of demonstrating that he was worthy of an insurance license. Supplemental Reproduced Record (SR.) at 8b. In the event that Judson's

license was suspended in accordance with the Consent Order and Judson either failed to request a hearing within 30 days after the notification of suspension was mailed to him or failed to demonstrate at the hearing that he was worthy of a license, Judson's suspended license would be revoked. *Id.*

5. We note that between December 1990, when Judson entered into the Consent Order, and June 1993, when the hearing was held on Judson's alleged violations of the Consent Order and insurance laws, Insurance Commissioner Maleski replaced Insurance Commissioner Foster.

6. On or about January 4, 1993, Pilgrim terminated its agency agreement with Judson.

received a telephone call from Judson who told her, in a belligerent tone, that she would not get a refund on the policy.

In February 1992, Judson solicited Margaret Montgomery, age 85, for the sale of long-term nursing care insurance. As the result of Judson's solicitation, Montgomery applied for insurance with Pilgrim and gave Judson a check for $6,732.80. Montgomery wrote a complaint letter to the Department following Judson's failure, after three months, to deliver her insurance policy.

In September 1992, Judson solicited Virginia Huntsinger, age 77, for the sale of long-term nursing care insurance. Judson was accompanied by another individual when he went to Huntsinger's house. Neither Judson nor his associate identified the associate to Huntsinger. The associate was a marketing representative for Pilgrim. Judson represented to Huntsinger that he was with American Fidelity when, in fact, he was acting on behalf of Pilgrim. Judson and his associate refused to leave Huntsinger's home despite several requests by her to do so. Huntsinger sought, by telephone, the assistance of another agent, Philip Cannella, to have Judson leave her residence. Judson falsely stated to Cannella that he was alone at Huntsinger's home. Following his telephone conversation with Judson and Huntsinger, Cannella called the police to assist Huntsinger. Judson and his associate left Huntsinger's home shortly after Judson spoke with Cannella on the telephone.

Based upon all of the evidence, the Commissioner concluded that, notwithstanding the Department's failure to prove some of its allegations against Judson, the evidence of record was sufficient to establish several instances of misrepresentations.[7] The Commissioner found that Judson had misrepresented his company affiliation to the Pfisters and to Huntsinger. The Commissioner concluded that, in making such misrepresentations, Judson had clearly violated the Consent Order, section 638 of the Act[8] and section 5 of the Unfair Insurance Practices Act (UIPA).[9] By misrepresenting his affiliation, Judson had gained access to the insured for the purpose of inducing the lapse or cancellation of existing policies and soliciting the insureds' business for policies that he was selling.

The Commissioner also concluded that Judson had misrepresented the financial status of American Fidelity to Unangst in violation of section 638 of the Act, 40 P.S. § 278. Further, Judson had falsely stated to Zeigler that he could obtain a refund for her on her prior policy with American Fidelity in violation of section 638 of the Act. The Commissioner also noted that Judson had not provided an adequate explanation for his failure to deliver an insurance policy to Montgomery in a timely manner.

■ The Commissioner concluded that when all of the evidence regarding Judson's misrepresentations was taken as a whole, it indicated a pattern of unethical and illegal conduct which demonstrated that Judson was not worthy of licensure. Accordingly, the Commissioner revoked Judson's license and

---

7. In her adjudication, the Commissioner stated that, at a hearing on the suspension of an agent's license pursuant to a consent order, the Department bears the burden of presenting a prima facie case as to the alleged violations of insurance laws. Adjudication at 9–10. Thereafter, the agent bears the ultimate burden of establishing his worthiness for licensure. *Id.*

8. 40 P.S. § 278. We note that throughout her decision and order, the Commissioner refers to 40 P.S. § 278 as section 639 of the Act. However, 40 P.S. § 278 is, in fact, section 638 of the Act. Based upon the statutory provisions that are quoted by the Commissioner, we conclude that the Commissioner meant to refer to section 638 of the Act, rather than section 639. Section 638 states in pertinent part:

> No agent ... shall make any misrepresentation ... of policies, oral, written, or otherwise, to any person insured in any company ... for the purpose of inducing or tending to induce a policyholder in any company ... to lapse, forfeit, or surrender his insurance therein, and to take out a policy of insurance in another company ... insuring against similar risks.

9. Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. § 1171.5(a)(1)(vi). Section 5 of UIPA prohibits "a misrepresentation for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion or surrender of any insurance policy." 40 P.S. § 1171.5(a)(1)(vi).

imposed upon him $4,000 in fines. Judson now appeals to this court.[10]

In his appeal, Judson raises the following issues: (1) whether the Commissioner abused her discretion in revoking Judson's license by basing her decision upon an erroneous factual conclusion regarding Judson's licensing status with American Fidelity; (2) whether the Commissioner's decision was based upon substantial evidence; and (3) whether the Commissioner abused her discretion by imposing sanctions on Judson which were disproportionate to the evidence presented against him.

Judson first asserts that, since he was a licensed representative of both American Fidelity and Pilgrim at the time he solicited the Pfisters and Huntsinger, he did not engage in any misrepresentation.[11] Judson states that only if he had not been a representative of American Fidelity but had held himself out as such would he have engaged in misrepresentation.

We conclude that Judson has misconstrued the Commissioner's findings with respect to his misrepresentations to the Pfisters and Huntsinger. Judson was not charged with violating the Act by acting as an agent without a license. The Commissioner, in fact, made no findings with respect to Judson's license status with American Fidelity. Judson was charged with violating section 638 of the Act, 40 P.S. § 278, by misrepresenting to prospective clients *which* insurance company he was working for at the particular time the solicitation was made. The issue of Judson's license status is separate from the issue of whether Judson failed to properly inform clients as to which insurance company he was

representing. It is the latter issue which is the pertinent one in this appeal.

■ Judson next asserts that the Commissioner's decision was not based upon substantial evidence. We disagree.

The Consent Order set forth the parameters under which the Department could take administrative action against Judson. The Consent Order provided for the immediate suspension of Judson's license upon a determination by the Department that he had violated the terms of the Consent Order or other insurance laws. If, at his hearing, Judson failed to demonstrate that he was worthy of a license, his suspended license would be revoked.

In her determination, the Commissioner found that Judson had violated the Consent Order, the Act and UIPA by: (1) misrepresenting his company affiliation to the Pfisters and Huntsinger; (2) falsely stating to Zeigler that he would obtain a refund on her prior policy; and (3) misrepresenting the financial status of American Fidelity to Unangst. In making her decision, the Commissioner noted that the nature of long-term nursing care insurance is such that there exists a potential for overreaching in solicitation. Adjudication at 11. The agent is generally dealing with persons of advanced years who may be intimidated by insurance matters and fearful of the effect of a lack of insurance. *Id.* at 11–12. Moreover, the high first year commissions on policies having annual premiums of several thousand dollars can produce an environment where the twisting of policies is a serious concern. *Id.* at 12. Given these considerations, the Commissioner stated that the sensitivity of this market requires that

---

**10.** This court's scope of review of a determination by the Commissioner to revoke an insurance agent's license is limited to determining whether there has been a violation of constitutional rights, errors of law committed, and whether necessary findings of fact are supported by substantial evidence. *Novak v. Pennsylvania Insurance Department*, 106 Pa.Commonwealth Ct. 232, 525 A.2d 1258 (1987). It is the Commissioner who is the ultimate fact-finder and whose duty it is to evaluate witness credibility, weigh evidence and resolve conflicts in the evidence. *Id.* As such, an appellate court will not substitute its discretion for that of the Commissioner or the

Department in matters of evidentiary weight or witness credibility. *Id.*

**11.** As evidence of his employment status with American Fidelity, Judson directs this court's attention to "Exhibit A" which has been attached to his brief. Exhibit A is a notice from American Fidelity to Judson terminating Judson's association with American Fidelity on or about November 27, 1992 due to lack of production. We note that, by order dated April 18, 1995, this court struck Exhibit A and all references to it in Judson's brief because it was not part of the certified record.

evidence that an agent actually engaged in illegal conduct be carefully reviewed. *Id.*

The Commissioner based her decision upon the testimony of the affected policyholders, the related documentary evidence and the testimony, or lack thereof, by Judson. She stated that the testimony of Judson was largely not credible. The Commissioner found troubling Judson's ability to recall details which were favorable to him while failing to remember other important details. Adjudication at 10.

Violet Pfister testified that, although Judson did not specifically state the name of the company he represented, she had understood that he was with American Fidelity. Notes of Testimony (N.T.) at 168. Pfister's understanding was consistent with her statement that, despite purchasing a Pilgrim insurance policy from Judson, she had wished to stay with American Fidelity. SR. at 16b. In complaint letters sent to the Department and to Pilgrim, Pfister stated that Judson had led her to believe that American Fidelity and Pilgrim were affiliated companies under a "mutual organization." SR. at 15b–16b. As such, Pfister thought that she was purchasing improved benefits under her policy with American Fidelity, rather than purchasing an entirely new and different policy with Pilgrim. *Id.*

Based upon the evidence presented, the Commissioner concluded that it would be unusual for a policyholder to reach such a conclusion about her insurance coverage unless such representations had been specifically made to her. The Commissioner further stated that the fact that, in his testimony, Judson did not deny Pfister's allegations of misrepresentations supported her conclusion that Judson had engaged in misrepresentation.

Huntsinger then testified that Judson had indicated to her that he was representing American Fidelity when, in fact, he was acting on behalf of Pilgrim. N.T. at 72–73. When Judson solicited Huntsinger at her home, he was accompanied by a marketing representative from Pilgrim who was never introduced to Huntsinger. The Commissioner, as fact finder, found Huntsinger's testimony to be clear, unequivocal and credible

that Judson had misrepresented to Huntsinger the company on whose behalf he was acting. The Commissioner also noted that, in the course of his testimony, Judson did not deny that he had held himself out to Huntsinger as representing American Fidelity, rather than Pilgrim.

The Commissioner concluded that, by misrepresenting his company affiliation, Judson had misrepresented to the Pfisters and to Huntsinger the insurance policy he sought to sell them which violated section 638 of the Act. Similarly, Judson's misrepresentations violated section 5 of UIPA because, based upon such misrepresentations, the Pfisters and Huntsinger were induced to exchange and convert their insurance policies to ones which were being sold by Judson. *See* 40 P.S. § 1171.5(a)(1)(vi).

When Judson solicited Zeigler for the sale of long-term nursing care insurance with Pilgrim, she already had a paid-up policy in force with American Fidelity. Zeigler testified that Judson represented to her that, if she purchased coverage from him with Pilgrim, he would have "no trouble" obtaining a refund for her from American Fidelity. N.T. at 81–85. Although Judson denied making this representation, the Commissioner, as fact finder, stated that Zeigler's testimony was credible because it would be reasonable for her to seek assurances of a refund from American Fidelity before purchasing other insurance coverage.

The Commission also found that Judson had misrepresented the financial status of American Fidelity to Unangst. Unangst testified that Judson told her that American Fidelity was "going out of business." N.T. at 195–96. The Commissioner noted that there was some uncertainty in some aspects of Unangst's testimony, particularly Judson's representations to Unangst concerning his company affiliation. However, the Commissioner found that Unangst was clear in expressing what she remembered and what she did not remember. The Commissioner, as fact finder, found that Unangst's testimony was specific and credible concerning Judson's statements about the financial status of American Fidelity. Based upon the evidence

presented, the Commissioner concluded that Judson's misrepresentations to Zeigler and Unangst violated section 638 of the Act.

Section 603 of the Act, 40 P.S. § 233, states that in order to obtain a certificate of qualification to act as an insurance agent, a person shall have secured on the application a verified statement that the applicant is of good business reputation and is worthy of such a certificate. Furthermore, section 604 of the Act, 40 P.S. § 234, states that when the Department is satisfied that the applicant is worthy of a certificate of qualification and has successfully passed an examination and otherwise complied with relevant provisions of the Act, it shall issue such a certificate. While this statutory language appears to concern only the initial grant of a license, this court has upheld the Commissioner's revocation of an existing license pursuant to this language. *See Termini v. Department of Insurance*, 149 Pa.Commonwealth Ct. 30, 612 A.2d 1094 (1992); *Fumo v. Insurance Department*, 58 Pa.Commonwealth Ct. 392, 427 A.2d 1259 (1981).

The Department's regulations, found at 31 Pa.Code § 33.7, describe the factors which may disqualify an individual from holding an insurance agent's license. Those factors include, *inter alia*, the licensee's violation of any insurance law, for which the Commissioner may suspend or revoke an insurance license that is then in force, and evidence that a licensee does not possess the professional competence and general fitness required for doing the business of insurance. 31 Pa.Code §§ 33.7(a)(6) and 33.7(a)(7). Such determination will be made after a thorough examination of the pertinent information and documents available to the Department which pertain to the honesty, reliability, efficiency, educational training and business experience, and reputation of the licensee. 31 Pa.Code § 33.7(a)(7).

■ This court has held that the Commissioner is empowered to exercise her discretion in determining whether an individual is worthy of an insurance license. *Park v. Chronister*, 151 Pa.Commonwealth Ct. 562, 617 A.2d 863 (1992), *petition for allowance of appeal denied*, 534 Pa. 654, 627 A.2d 731 (1993); *Slanina v. Sheppard*, 27 Pa.Common-

wealth Ct. 376, 366 A.2d 963 (1976). Based upon our review of the record, we conclude that there was substantial evidence that Judson violated insurance laws and that Judson lacks the general fitness necessary for the business of insurance. Accordingly, the Commissioner did not abuse her discretion in determining that Judson was unworthy of holding an insurance license.

■ Judson next asserts that the Commissioner exceeded her discretion in revoking his license and imposing upon him $4,000 in fines because such sanctions were wholly disproportionate to the evidence presented. We disagree.

This court has held that the Commissioner is given broad discretion to determine the penalties imposed by the Department pursuant to section 639 of the Act, 40 P.S. § 279. *Novak*. Absent an abuse of that discretion, this court will not interfere with a decision by the Commissioner. *Id.* Where the Commissioner's determination is supported by substantial evidence, there is no abuse of discretion. *Id.* Since we have already concluded that the Commissioner's determination was supported by substantial evidence, we now conclude that the penalties imposed upon Judson by the Commissioner did not constitute an abuse of her discretion.

Further, we hold that the penalties imposed by the Commissioner were supported by statutory authority. The Commissioner revoked Judson's license and imposed upon him monetary penalties based upon his violations of section 638 of the Act. Section 639 of the Act provides the Commissioner with express statutory authority to impose monetary penalties and to suspend, revoke or refuse to renew an agent's certificate of qualification under certain circumstances. Section 639 states in pertinent part:

Upon satisfactory evidence of the violation of sections 602, 605, 606, 608, 609, 622 and 631 through 638 by any agent of any insurance entity or by any insurance broker ... the department may pursue any one or more of the following courses of action regardless of whether the agent or broker was so authorized by the department:

(1) Suspend or revoke or refuse to renew the certificate of qualification or license of the offending party or parties.

(2) Impose a civil penalty of not more than one thousand dollars ($1,000.00) for each act in violation of any of the provisions listed in this subsection.

40 P.S. § 279.

In addition to Judson's violations of section 638 of the Act, the Commissioner also found that Judson's misrepresentations violated section 5 of UIPA, 40 P.S. § 1171.5(a)(1)(vi). Given such violations, section 9 of UIPA empowers the Commissioner, *inter alia*, to suspend and/or revoke Judson's license. Section 9 of UIPA states in pertinent part:

Upon a determination by hearing that this act has been violated, the Commissioner may issue an order requiring the person to cease and desist from engaging in such violation or, if such violation is a method of competition, act or practice defined in section 5 of this act, the Commissioner may suspend or revoke the person's license.

40 P.S. § 1171.9.

We also note that the Commissioner found that, by misrepresenting his company affiliation, Judson had violated the Consent Order which he had signed. Based upon the evidence presented at the hearing, the Commissioner concluded that Judson was unworthy of holding an insurance agent's license. The Consent Order specifically provided that if, at the hearing, Judson failed to demonstrate that he was worthy of a license, then his suspended license would be revoked. SR. at 8b.

Based upon all of the evidence, we conclude that the penalties imposed upon Judson by the Commissioner were authorized by statute and were properly within her discretion.

Accordingly, the order of the Commissioner is affirmed.

### ORDER

NOW, this 1st day of August, 1995, the order of the Insurance Commissioner of Pennsylvania, dated September 30, 1994, at No. P90–10–14, is affirmed.